120 So.2d 590 (1960)
Ray CASH, Petitioner,
v.
R.O. CULVER, State Prison Custodian (R.B. Gramling, Acting Director of the Division of Corrections of the State of Florida, As Custodian of the Florida State Prison), Respondent.
Supreme Court of Florida.
May 11, 1960.
*591 Potter, Langbein & Burdick and Irwin L. Langbein, West Palm Beach, for petitioner.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
By original application for a writ of habeas corpus petitioner Cash seeks release from the State prison where he is serving a fifteen year sentence for the crime of burglary.
We must determine whether Cash was deprived of a reasonable opportunity to employ counsel of his own choice and therefore denied due process of law.
Upon our original consideration of the petition we denied the writ without opinion. Our judgment was reversed by the Supreme Court of the United States. Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557. Pursuant to the mandate in the case last cited we issued the writ and required return instanter. The matter is now before us upon the petition and the return supplemented by a transcript of the entire record of the trial which resulted in a jury verdict of guilt and the fifteen year sentence.
The parties here agree that the trial record adequately presents the factual situation which produced the original petition. They advise us that the further taking of testimony would reveal nothing of consequence that would throw any additional light upon the claims asserted in the petition. However, by the return the respondent has denied all of the allegations of the original petition. As we shall see *592 there are some factual aspects of the matter not concluded by the trial record.
The opinion of the Supreme Court of the United States in Cash v. Culver, supra, will reveal that the Court accorded all of the factual allegations of the petition prima facie verity absent a denial or any factual showing to the contrary. An examination of the opinion of the United States Court will show that the Court merely assumed the correctness of the undenied allegations of the petition for the purpose of ordering the issuance of the writ. The trial record now reveals that, for all practical purposes, the factual allegations of the petition are without support in the record insofar as the right of Cash to have court-appointed counsel might be concerned. In the petition Cash alleged that he had requested the judge to appoint an attorney to represent him at his second trial. He pictured himself as an uneducated farm boy with no experience in the technicalities of the law or the ways of the courtroom. The petition urges that the lack of education and inexperience of the petitioner, supplemented by the complexities of the trial and the obvious grievous errors that were committed by the trial judge, all add up to a deprivation of due process in violation of the Fourteenth Amendment to the Constitution of the United States.
In the matter of the alleged refusal of the trial judge to appoint counsel the petitioner's claims are entirely devoid of merit. In the first place it is now conceded that he did not request the trial judge to appoint a lawyer to represent him. Furthermore, our study of the trial record reveals that the petitioner Cash conducted his defense with almost unbelievable competency for a layman. While perhaps some errors were committed in the conduct of the trial, they were not of such nature as to justify correction in a proceeding of this kind.
Under applicable Florida Statutes it is only in capital cases that a trial judge is mandatorily required to supply counsel for an indigent defendant. Section 909.21, Florida Statutes, F.S.A. Johnson v. Mayo, 158 Fla. 264, 28 So.2d 585; Butler v. Culver, Fla. 1959, 111 So.2d 35.
If upon examination it is apparent that by reason of age, ignorance, or inexperience of the accused, the gravity of the offense or complexity of the issues, he would not be able to represent himself fairly and adequately, then the trial judge has an obligation to see to it that the accused has a lawyer even though the case is noncapital. However, this responsibility of the trial judge arises out of the due process provisions of the Fourteenth Amendment to the Constitution of the United States, rather than by virtue of the provisions of the laws of the State of Florida. Johnson v. Mayo, Fla. 1949, 40 So.2d 134; Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647. When we apply these standards of measurement we are convinced that insofar as refusal to provide counsel is concerned, the contentions of the petitioner are entirely without support. As pointed out above he did not request counsel. Butler v. Culver, supra. He actually handled his own defense with a degree of professional finesse oftentimes found lacking in specialists in the field of criminal law. To illustrate the soundness of this observation the record shows that petitioner capably presented an oral motion for a continuance at the beginning of his trial; he examined prospective jurors and exercised peremptory challenges; he submitted approximately fifty-five objections to various items of evidence and four times moved to strike certain evidence; he subjected the State's witnesses (including a special agent of the F.B.I.) to a very thorough cross-examination; at the conclusion of the State's case, he presented a motion for a directed verdict, and although he did not take the witness stand the record shows that he delivered an argument to the jury which required one hour and fifteen minutes. The serious errors described in the petition and considered by the Supreme Court of the *593 United States in arriving at its judgment in the issuance of the writ are not supported by the transcript of the trial record. Insofar as refusal to appoint counsel is concerned we conclude, therefore, that there is not here present any State action tantamount to a deprivation of due process of law within the proscriptions of the Fourteenth Amendment.
We are next confronted by what appears to us to be a much more serious problem. Petitioner contends that even though he was denied no constitutional right when the trial judge failed to appoint counsel, nevertheless, he was denied a reasonable opportunity to obtain his own counsel. He asserts that a reasonable chance to obtain a lawyer to represent one in a serious criminal matter is as much an aspect of due process as is notice and an opportunity to be heard.
We must momentarily recur to the factual background. In his first trial on the charge of burglary in December, 1954, petitioner was represented by counsel and the result was a mistrial. According to certain exhibits appearing in the record, petitioner's then attorney, Mr. Carr, as late as January 18, 1955, was representing the petitioner because at that time he agreed with the State Attorney to set the second trial for February 21, 1955. All of this time, of course, Cash was incarcerated in the State Prison at Raiford. The record also reveals that on February 15, 1955, Mr. Carr executed a motion to withdraw as counsel of record, sent a copy to the petitioner and requested the State Attorney to present it to the trial judge. On February 15, 1955, the State Attorney notified petitioner who was in the State prison, that his defense counsel expected to withdraw from the case and the trial would be held on February 21. On February 16, 1955, in what appears to have been an ex parte proceeding without the presence of or any statement from the petitioner, the trial judge entered an order permitting his lawyer to withdraw from his defense. So far as this record reveals petitioner was accorded no opportunity to object to the withdrawal or otherwise explain his position in the matter. See Canon 44, Rule B, Ethics Governing Attorneys. 31 F.S.A. p. 779.
When taken to trial on the morning of February 21, the petitioner orally moved the court to grant him a continuance until he could obtain a lawyer to represent him. He explained that he had been confined to the State prison, that his mother had made an effort to obtain counsel for him but that the shortness of time, among other things, had prevented her from obtaining a lawyer. We emphasize that this motion was based upon the petitioner's alleged need for time to obtain his own counsel. The motion did not request the trial judge to appoint a lawyer for the accused. In presenting this motion the petitioner was asserting the right of an accused to have a reasonable opportunity to obtain a lawyer. He contends here that when the trial judge denied his motion for a continuance under the circumstances he, in effect, deprived the accused of a fair and reasonable chance to obtain a lawyer of his own choice. This, the petitioner asserts, constituted state action tantamount to denial of due process and, therefore, condemned by the Fourteenth Amendment to the Constitution of the United States.
In our consideration of the claims of the petitioner we must have in mind that aspect of the Fourteenth Amendment to the Constitution of the United States, which provides in part:
"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *".
Section 12, Declaration of Rights, Florida Constitution, F.S.A., contains substantially the same language.
Section 11, Declaration of Rights, Florida Constitution provides in part:
"In all criminal prosecutions, the accused shall have the right to * * * *594 be heard by himself, or counsel, or both * * *".
We interpolate in passing that we are not here confronted by that provision of the Sixth Amendment to the Constitution of the United States which provides that in criminal prosecutions the accused shall enjoy the right "to have the Assistance of Counsel for his defence." Under the Federal organic law it is essential to due process that one charged with a crime in a Federal Court be assisted by counsel unless he voluntarily waives the privilege after being fully informed of his rights. The provisions of the Sixth Amendment, however, are not applicable to prosecutions in State courts. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Gallegos v. State of Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86. Under the Florida Constitution the accused has a right to be heard by himself or counsel but due process does not make it mandatory that counsel be provided for him as a matter of course except in capital cases. The exception comes about because of Section 909.21, Florida Statutes, F.S.A., and the decisions of the Supreme Court of the United States which since Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, are to the effect that due process in capital cases requires representation by counsel.
We must determine whether in the instant case the petitioner was denied a reasonable opportunity to obtain counsel and, therefore, deprived of due process guaranteed to him by the Fourteenth Amendment as well as Section 11, Florida Declaration of Rights.
Efforts to define "due process of law" have produced many classical observations but have done little to delineate the boundaries of this fundamental organic requirement. We have been told that it "is not susceptible to reduction to a mathematical formula." Gibbs v. Burke, 337 U.S. 773, 781, 69 S.Ct. 1247, 1251, 93 L.Ed. 1686. It has been described as a "concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights." Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595. The late Mr. Justice Cardoza twice wrote that the guarantee of due process of law mandates respect for those personal freedoms and immunities which are "so rooted in the traditions and consciences of our people as to be ranked as fundamental," Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, or which are "implicit in the concept of ordered liberty." Palko v. State of Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288.
Perhaps all of the decisions on this exceedingly difficult principle are rather well epitomized in the opinion in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, where it is suggested that the test to be applied is whether the accused has been accorded a fair trial after an appraisal of the totality of the facts and conditions in the particular case.
In Betts v. Brady, supra, it was recognized that an absolute right to counsel did not exist at common law. In fact, in early England the prisoner was not permitted to be heard by counsel upon any indictment for treason or felony on a plea of not guilty. The rule was relaxed in 1695 to permit one accused of treason to have the privilege to be heard by counsel. It was not until 1836 that the English Rule was amended to permit defense by counsel against any charge of a felony. Thus it was that our adoption of the common law lacked a guaranty of right to counsel. Because of this common law practice, in cases such as Betts v. Brady, supra, the Supreme Court of the United States has construed constitutional provisions such as Section 11, Declaration of Rights, Florida Constitution, as intended to do away with the rules which denied representation. Such provisions guarantee to the accused the privilege of being heard by counsel but do not require that counsel be provided for him in all criminal cases. The requirement *595 is imposed upon the federal courts by virtue of the Sixth Amendment to the United States Constitution.
In Christie v. State, 94 Fla. 469, 114 So. 450, 451, we ourselves committed this Court to the notion that a fair and impartial trial contemplates counsel to look after the defense of the accused, compulsory attendance of witnesses if need be "and a reasonable time in the light of all the prevailing circumstances to investigate, properly prepare, and present his defense." The Florida constitutional guaranty of the right of an accused to be heard by his privately selected counsel would be completely meaningless and devoid of any benefit if it did not contemplate the privilege to the accused to have a reasonable chance to obtain a lawyer, to confer with him and to equip him with the information necessary to present any defense. The rule of Christie v. State, supra, was projected into the federal concept of due process by the opinion of the Supreme Court of the United States in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4. By this decision the Court made clear a distinction implicit in the application of the Fourteenth Amendment "due process clause" between the so-called "right to counsel" and the right to "reasonable opportunity to employ and consult with counsel." It was clearly pointed out that the right to be heard by counsel would be of little value if a defendant could be deprived of a reasonable opportunity to employ and consult with counsel. Powell v. State of Ala., 287 U.S. 45, 53 S.Ct. 55, 58, 77 L.Ed. 158; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Avery v. State of Ala., 308 U.S. 444, 60 S.Ct. 119, 84 L.Ed. 455. The existence the distinction in these two basic concepts of "right to counsel" was further expressed in Chandler v. Fretag, 348 U.S. 3, 9, 75 S.Ct. 1, 4, 99 L.Ed. 4:
"* * * Petitioner did not ask the trial judge to furnish him counsel; rather, he asked for a continuance so that he could obtain his own. The distinction is well established in this Court's decisions. [Citation of cases omitted] Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified."
Any consideration of the right of an accused to have counsel appointed by the Court is influenced almost entirely by the facts and circumstances which show whether "an ingredient of unfairness actively operated in the process that resulted in his confinement." Foster v. People of State of Illinois, 332 U.S. 134, 137, 67 S.Ct. 1716, 1718, 91 L.Ed. 1955. On the other hand, the right of an accused to have a reasonable opportunity to employ counsel of his own choice would usually be influenced by an entirely different set of facts and circumstances. For the most part, the determining facts would be those preceding the trial itself. For example, and as illustrative but not exclusive, the length of time the accused has been under the charge prior to his trial or the fact that he has had fair warning of the date of trial for a period of time sufficient to enable him to contact and employ counsel would have a bearing. The fact that the accused has been confined to prison prior to his trial would be an element to consider; so also would be the fact that the accused was represented by counsel who was permitted to withdraw from the case on the eve of trial. In other words, applying a rule analogous to the rule of Betts v. Brady, supra, [316 U.S. 455, 62 S.Ct. 1256.] we should look at the "totality of facts" for the most part prior to the time of trial, and ascertain whether the accused has had a fair chance to obtain a lawyer to represent him. If he has been denied such a chance, then this fact, and this fact alone, would condemn any subsequent trial with an element of unfairness tantamount to a deprivation of the privilege of being heard by counsel as assured by the Florida Constitution.
The importance of an attorney in the instant case, we think, might well be indicated by the fact that the first trial of the *596 petitioner resulted in a mistrial. Here he had the benefit of able counsel. The record affirms the fact that this same lawyer was apparently representing Cash until January 18, 1955. So far as the documents presently before us are concerned, it was not until February 15, while still in the State prison, that Cash was advised that his lawyer contemplated asking the judge to permit him to withdraw from the defense. The record also suggests that the trial judge permitted the lawyer to withdraw without consulting the petitioner or obtaining his reaction to the withdrawal motion.
We are not at this point holding that the record submitted necessarily leads to the conclusion that Cash was denied a reasonable chance to employ another lawyer. Under the Florida Constitution, he had a right to be heard through Counsel of his choice. We here hold that implicit in this right is the right to have a reasonable opportunity to obtain counsel and confer with him prior to the trial. Denial of this right is a denial of due process as contemplated by the provisions of Section 11, Declaration of Rights, Florida Constitution, and the due process provisions of the Fourteenth Amendment, supra.
In order to afford the petitioner and respondent an opportunity to present relevant facts in the premises, the Honorable William H. Maness, Circuit Judge, Fourth Judicial Circuit, is hereby appointed a commissioner of this Court to receive such evidence as might be offered to support the petition and the return on the question of the alleged denial of the right to obtain counsel resulting from the denial of the motion for continuance. The commissioner shall cause the testimony to be duly transcribed and reported to this Court, together with his findings and recommendations.
Inasmuch as this matter has been pending for a considerable period of time, and in view of the high prerogative nature of the proceeding, it is suggested that the commissioner move with such reasonable dispatch as is consistent with the other business of this Court.
It is so ordered.
THOMAS, C.J., and TERRELL, HOBSON and O'CONNELL, JJ., concur.