122 So.2d 179 (1960)
Ray CASH, Petitioner,
v.
R.O. CULVER, State Prison Custodian (R.B. Gramling, Acting Director of the Division of Corrections of the State of Florida, As Custodian of the Florida State Prison), Respondent.
Supreme Court of Florida.
July 8, 1960.
*181 Potter, Langbein & Burdick, West Palm Beach, for petitioner.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
We again consider this original application for a writ of habeas corpus, this time in the light of our Commissioner's recommendation that the petitioner Cash be remanded to custody.
Our conclusion must turn on a decision as to whether Cash was deprived of a reasonable opportunity to employ counsel of his own choice to represent him at his second trial for the crime of burglary.
In compliance with a mandate of the Supreme Court of the United States we issued a writ of habeas corpus and ordered an immediate return. Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557. We subsequently considered the matter on the *182 petition and the return, together with a transcript of the trial record which had resulted in a jury verdict of guilt and the fifteen (15) year sentence which Cash is now serving. In our last consideration of the problem we concluded that Cash had failed to support a claim of denial of due process grounded on an alleged refusal of the trial judge to appoint counsel to represent him at the second trial. Cash v. Culver, Fla., 120 So.2d 590. Upon a consideration of a totality of the facts we found from the record presented that there had been no encroachment upon the accused's right to a fair trial as a result of the failure of the trial judge to volunteer the appointment of a lawyer to represent him. Cash v. Culver, supra; Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647; Johnson v. Mayo, Fla., 40 So.2d 134. In our last opinion, 120 So.2d 590, we did express substantial doubts as to whether Cash had been accorded a reasonable opportunity to employ counsel of his own choice. We appointed Honorable William H. Maness, Circuit Judge of the Fourth Judicial Circuit to serve as a commissioner of this Court to hear evidence on the subject and report the same together with his findings. Judge Maness promptly and efficiently heard the evidence tendered by both parties. We now have the benefit of a transcript of the testimony supplemented by the findings of the Commissioner who has recommended that Cash be remanded to custody. The sole question remaining is whether the trial record, supplemented by the evidence offered at the Commissioner's hearing, sustains a conclusion that Cash was denied a reasonable opportunity to obtain a lawyer to defend him against the charge of burglary and, therefore, deprived of his constitutional right to be heard through counsel.
We interpolate the fact that Judge Maness also received and reported additional evidence which the petitioner desired to offer on the matter of the alleged failure of the trial judge to appoint a lawyer to represent the accused. While this was beyond the scope of our last judgment, it is understandable that the Commissioner was desirous of according to the petitioner every possible opportunity to support his claims. The additional testimony thus offered only serves to confirm the correctness of our original conclusion denying relief on this ground. The matter of the alleged deprivation of a reasonable opportunity to employ counsel present a different problem and requires a consideration of different factors. Cash v. Culver, supra.
The Fourteenth Amendment to the Constitution of the United States prohibits state action which would "deprive any person of life, liberty, or property, without due process of law; * * *"
Section 12, Declaration of Rights, Florida Constitution F.S.A., imposes similar restraints on this State.
A more specific organic directive is reflected by Section 11, Declaration of Rights, Florida Constitution, wherein it is provided that in criminal prosecutions "the accused * * * shall be heard by himself, or counsel, or both * * *"
We are not here confronted by the requirements of the Sixth Amendment to the Constitution of the United States, which has been construed to require appointment of counsel in Federal criminal cases unless the accused voluntarily waives the privilege. The Sixth Amendment applies only to the Federal Courts. It does not compel state action. Since Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, representation by counsel is essential to due process in state court capital cases, and in other state court cases falling within the rule of Betts v. Brady, supra, but in no other state situation unless required by state law.
We now consider in isolation the remaining claim that Cash was denied his constitutionally guaranteed privilege of being heard by counsel. Section 11, Florida Declaration *183 of Rights, supra. Coherence suggests that we focus our attention on the facts bearing directly on this aspect of petitioner's contentions.
On December 6, 1954, Ray Cash, approximately nineteen years of age, was tried for the crime of burglary. His co-defendant and alleged accomplice was a much older man named Lawrence Allen. Cash was represented effectively by an experienced Miami criminal defense lawyer, Honorable Henry Carr. Allen was represented by another capable lawyer. A mistrial was the result. From this point on a chronology of events is of significance.
On December 24, 1954, Mr. Carr was advised by the attorney for the accomplice Allen, that his client intended to change his plea from "not guilty" to "guilty." In Carr's judgment this meant that Cash would be implicated by the accomplice who apparently planned to "turn state's evidence" in exchange for limited freedom. Subsequent events proved the correctness of Carr's suspicions. Allen did testify at the second Cash trial and pointed the accusing finger at the petitioner. Immediately upon receipt of the information that Allen intended to change his plea, Mr. Carr, by letter dated December 24, 1954, notified Mrs. Robbin Cash, the mother of petitioner. Incidentally, the time of this mother appears to have been occupied almost entirely by an understandable maternal effort to save her son from a long prison sentence. The instant record reveals the tragic situation of her three sons in the State prison for long periods of time as a result of convictions for some of the most serious crimes on the books. Mrs. Cash never replied to Mr. Carr's letter of December 24, 1954.
On January 18, 1955, Carr, still admittedly serving as attorney for Ray Cash, agreed with the state attorney that the second trial would be held February 21, 1955. Again on January 28, Carr wrote Mrs. Cash regarding the "dim outlook" and urged her to get in touch with him on receipt of his letter. Allen, the accomplice had pleaded guilty on January 26, 1955.
Sometime around February 3, 1955, Mr. Carr went to Raiford, the State Prison, and conferred with petitioner regarding Allen's plea of guilty and the potential effect on Cash's situation. He suggested the possibility that Cash plead guilty and authorize his lawyer to bargain for a lighter sentence. The lawyer left Raiford with no definite understanding, except that his client "wanted to think it over." At no time did the attorney advise the client that if he declined to plead guilty the lawyer had any intention of withdrawing from the defense. In fact, at no time did Mr. Carr himself advise Cash that he expected to withdraw from the case. On his February 3 visit to Raiford, he told Cash that his second trial had been set for February 21. After this prison conference Mr. Carr never saw Ray Cash again until the date of the Commissioner's hearing in this matter on February 11, 1960.
About February 8, 1955, Cash, still in Raiford State Prison, had a telephone call from someone in Carr's office who inquired as to what Cash intended to do about "pleading guilty." Cash advised him that he intended to plead "not guilty." In response the man apparently calling for Carr replied "that's all I wanted to know." There was no mention of any contemplated withdrawal from the case.
On February 15, 1955, one Mark O'Quinn, who was then Carr's partner, called the trial judge about Carr's withdrawal from the case. He advised the state attorney of the plan on the same day. Whether he did this at Carr's request or even with his consent is not clear from the record. The state attorney immediately served on Cash in the State Prison, a "notice of trial." It will be recalled that the trial was set for the morning of Monday, February 21, 1955. On February 15, the preceding Tuesday, the accused was given the first indication that his lawyer might withdraw *184 from his defense and this came by indirection through the state attorney.
On February 16, the trial judge signed an order allowing Mr. Carr to withdraw from the Cash defense. During all of this time Cash remained confined in the State Prison. The withdrawal order was signed ex parte. Cash was given no opportunity whatever to object or to explain his predicament in order to forestall the withdrawal authorization. Canon 44, Rule B, Ethics Governing Attorneys, 31 F.S.A. On this same day Cash received through the mail at Raiford Prison, a copy of the motion and proposed withdrawal order, as well as a letter signed by Mr. O'Quinn, stating that Mr. Carr intended to get out of the case, allegedly because of a failure to follow his advice and a failure to pay his fees. This record fails to sustain any inference even that Mr. Carr at any time ever suggested to Cash that he would withdraw if Cash refused to follow his judgment that it would be better to plead guilty. Likewise, the record sustains no inference that Carr ever conditioned his continued representation of Cash on the payment of additional fees. In fact, Cash referred to Mr. Carr as the "family lawyer." Judging from the amount of business which the two older brothers generated for this specialist in the field of criminal law, it is quite understandable that the youngest member of the family viewed him as a sort of family fixture who always stood ready in time of need.
On the afternoon of February 16, 1955, Mrs. Robbin Cash, then living in Georgia, visited her son, the petitioner, in the State Prison. Learning of the contemplated withdrawal of his lawyer, she immediately left Raiford for her former Home, Miami, a distance of about 375 miles. Arriving in Miami the next day, Thursday, February 17, Mrs. Cash conferred with one lawyer but was advised that he could not take the case because he would not have enough time to prepare. On Sunday, February 20, Mrs. Cash returned to Gainesville and on the morning of February 21, she arrived at the courthouse to find her son entering the court room for the second trial. At the opening of the trial the petitioner moved the court for a continuance on the ground that he had been incarcerated in the State Prison continuously since his first trial, that he was depending on his lawyer to represent him at the second trial, that he had no idea that the lawyer intended to withdraw until he was notified of the possibility by the state attorney the preceding Tuesday, that his mother had been trying to obtain a lawyer since the preceding Thursday, but that due to the shortness of time available to prepare the case, she was unsuccessful in having anyone undertake the representation. In reply the state attorney advised the Court that witnesses had been summoned from long distances in other states and that any delay would result in substantial inconvenience and expense to the State. The trial judge denied the motion for a continuance.
The sum of the foregoing chronology, simply is that the petitioner, after having once been tried with a resulting mistrial, had continuously been lodged in the State Prison. He had been represented by a family friend and lawyer who, admittedly, was well trained in the practice of criminal law. He had depended entirely upon this lawyer to represent him in his second trial. His lawyer had never demanded additional fees, nor had he threatened to withdraw from the case if the client declined to follow his suggestion to plead guilty. So far as the petitioner knew, there was not the slightest indication that his lawyer expected to desert him, until five or six days prior to the trial, at which time he received the information in the State Prison through the state attorney whose job it was to see that he stayed in prison. The trial judge in an ex parte proceeding authorized the defense lawyer to withdraw from the case on his own representation without giving the petitioner an opportunity to object to the withdrawal or explain his plight should the withdrawal be authorized.
*185 Under these circumstances the client was entitled to be heard before the lawyer was allowed to abandon him. When the petitioner requested a continuance, inconvenience and expense to the state were asserted as reasons for denial. The withdrawal of defense counsel with court approval created the necessity for the continuance. All of this evaluation of convenience and expense should have been considered on the withdrawal application before the accused was "left in the lurch" without a lawyer.
As a result, the petitioner insists that he was denied a reasonable opportunity to obtain counsel, and therefore, was denied due process in his trial under both the Federal and Florida Constitutions. We think this record compels recognition of his contention.
We preface our discussion of the applicable law with the further observation that the facts recited are not disputed. There are no material conflicts in the testimony presented to the Commissioner.
It will be recalled that Section 11, Declaration of Rights, Florida Constitution, guarantees to one on trial for crime, the right to be heard by himself or by counsel. While this does not guarantee the appointment of counsel for an indigent defendant in all cases, Cash v. Culver, supra; Betts v. Brady, supra, it does recognize the absolute organic right of one charged with crime to be represented at his trial by a lawyer of his own procurement.
This is not a novel concept in Florida. As early as Moore v. State, 59 Fla. 23, 52 So. 971, this Court recognized the applicability of Section 11, Florida Declaration of Rights, as guaranteeing to an accused, not only the right to speak through counsel, but as well to have a reasonable time in which to prepare for trial. See also Coker v. State, 82 Fla. 5, 89 So. 222.
In May v. State, 89 Fla. 78, 103 So. 115, we held that the right to be heard by counsel in criminal prosecutions is so fundamental that it could not be abridged or denied by placing an unreasonable restriction on the length of time allowed for argument to the jury under the circumstances of a complicated case. In Reed v. State, 94 Fla. 32, 113 So. 630, it was recognized that a fair trial contemplates not only the actual trial itself, but also a fair and reasonable opportunity to prepare for trial. This includes adequate time to consult with counsel and prepare one's defense before he is called before a jury charged with his deliverance.
Obviously, the time element involved in preparation for trial must be influenced, if not governed entirely by the circumstances of each case giving regard to the complexities of the particular matter. Thus, in Christie v. State, 94 Fla. 469, 114 So. 450, it was held that a fair and impartial trial contemplates counsel to present the defense, compulsory attendance of witnesses, if necessary, and a reasonable time to investigate and prepare the defense preliminary to the trial.
In Messer v. State, 120 Fla. 95, 162 So. 146, we held that Section 11, of the Florida Declaration of Rights proclaims the constitutional right to be heard by counsel as an indispensable aspect of due process. It is a right so essential to a fair trial that its denial cannot be tolerated. When asserted by an accused, as in the instant case, its refusal so completely saturates the trial with error that an ultimate judgment of conviction is considered completely invalid and unenforceable.
In Deeb v. State, 131 Fla. 362, 179 So. 894, this Court again announced that the right to be heard by counsel when asserted by an accused in a criminal case is a mandatory organic rule of procedure in all criminal prosecutions in this State. See also Wood v. State, 1944, 155 Fla. 256, 19 So.2d 872; Floyd v. State, Fla. 1956, 90 So.2d 105.
*186 We have reviewed our own precedents to demonstrate that they clearly support the decisions of the Federal Courts regarding the essentiality of an opportunity to obtain counsel of one's own choice as an aspect of due process under the Fourteenth Amendment to the Constitution of the United States.
In recent years much has been written regarding federal post-conviction review of state court judgments in criminal matters. We think there is substance to the notion that there has been a broadening of Fourteenth Amendment due process restrictions on state action. However, we have the view that a contributing factor in this development has been the apparent reluctance of some state courts to take cognizance of and apply many of these basic concepts of due process which are of relatively recent origin but are nonetheless controlling law. In following such a course we think the State jurisdictions merely invite further inroads on their sovereignty. See "Federalism and State Criminal Procedure", Volume 70, Harvard Law Review 1, a splendid article by Justice Walter Schaefer of the Supreme Court of Illinois. We have no desire to contribute further to this development.
As early as 1923 in Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, the Supreme Court of the United States announced the doctrine that the failure of a state to provide corrective processes to prevent the deprivation of a man's liberty accomplished by denial of constitutional guarantees, will justify an appeal for relief in the federal system under the Fourteenth Amendment. When a state brings an accused to trial and in order to obtain a conviction deprives him of some organic right to a fair trial or denies an essential element of due process in the course of the trial, such denial constitutes state action, violative of the Fourteenth Amendment due process requirement.
It was not until 1932, however, in Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, that this right to the assistance of counsel was cemented to the other essentials of due process in state criminal cases resulting in the death penalty. In Powell v. State of Alabama, supra, aid to counsel in a capital case became an absolute essential to due process under the Fourteenth Amendment regardless of the provisions of state law on the subject.
Finally, in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4, a habeas corpus proceeding, it was held that criminal due process contemplates a reasonable opportunity to obtain counsel of one's own choice before a man can be put on trial for his life or liberty. Obviously, that which is a reasonable time to be allowed to obtain a lawyer will vary with the circumstances. One must take into consideration the nature and complexities of the case, the opportunity of the accused to contact and confer with a lawyer, as well as the extensiveness of any investigation required to prepare the defense. In Chandler v. Fretag, supra, an accused was surprised by a new charge on the day of trial. His conviction was held of no effect in the habeas corpus proceeding because he was denied an opportunity to obtain a lawyer to speak for him against the new charge. By the same token, in Christie v. State, supra, a rape case involving the death penalty, the right of the accused to be heard by counsel was held to have been infringed, even though he had employed two exceedingly capable lawyers over two weeks prior to his trial. In the meantime Christie had been removed from the seat of trial to another jail, some one hundred miles away for safekeeping. This Court held that the extreme inconvenience imposed upon both counsel and accused under such circumstances, made adequate preparation impossible and was therefore a denial of the Florida constitutional guarantee to be heard by counsel.
We repeat for emphasis that we here deal with a trial court's refusal to allow an accused a reasonable opportunity to *187 obtain his own lawyer. We have put aside any problem involving a trial court's refusal to appoint a lawyer. The two situations involve entirely different factors. For example in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, a former Assistant United States District Attorney was held to have been denied due process when he was refused an opportunity to obtain counsel to represent him in defense against a criminal charge.
There are now many decisions which firmly establish that a fair and reasonable chance to obtain counsel in a criminal case is absolutely essential to due process and therefore vital to the validity of an ultimate judgment of guilt. Chandler v. Fretag, supra, is the leading decision on this particular point. There are, however, many others. House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348; Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127; Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Melanson v. O'Brien, 1 Cir., 191 F.2d 963; Tinkle v. United States, 8 Cir., 254 F.2d 23; Walker v. State of Georgia, 194 Ga. 727, 22 S.E.2d 462.
The instant case does not require any novel recognition of a constitutional claim that "would furnish opportunities hitherto uncontemplated for opening wide the prison doors * * *" Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 1719, 91 L.Ed. 1955. As pointed out in the beginning, the rule upon which this petitioner relies is imbedded in our own Constitution and has been recognized as an essential aspect of due process for many years. The fact that it might appear to some that there has been a long delay between the date of conviction in 1955 and the entry of the judgment in this matter should not militate against the relief to be granted but should serve to remind that all of the delay, expense, and difficulties occasioned by the instant proceeding could have been avoided at the outset by a straightforward recognition of the organic rights of one accused of crime. Incidentally, the petitioner filed the instant petition originally in 1957. We are not here charged with passing upon the guilt or innocence of the petitioner. Our sole responsibility is to determine whether he is being lawfully or unlawfully restrained of his liberty. He might be one of the State's most vicious burglars. Indeed, apparently, his family has contributed some who could be so classified. Nevertheless, under our system, before one can be deprived of his liberty in a criminal proceeding he is entitled to a trial according to due course of law. Anything less is totally ineffective as a basis for detention. We are thoroughly convinced after a detailed consideration of this entire record, that this petitioner was not so convicted.
When one is convicted of a crime as a result of a deprivation of organic due process, the judgment of guilt is void and may be set aside in a habeas corpus proceeding even after the appeal period has expired. We are not here confronted by contended lack of jurisdiction in the trial court. The Court had jurisdiction but its void judgment will not support petitioner's detention. In re Barnes, 146 Fla. 12, 200 So. 93; State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818; Jones v. Cook, 146 Fla. 253, 200 So. 856; 25 Am.Jur. "Habeas Corpus" Section 153, p. 248.
Finding as we do that the ultimate conviction of the petitioner was obtained as a result of a proceeding in which he was denied due process of law because of the deprivation of a reasonable opportunity to obtain counsel of his own choice and to defend through such counsel, he must be discharged from custody under that pretended judgment but he shall be retained in custody by the respondent to be by him held and safely kept until the *188 further order of the Circuit Court, Eighth Judicial Circuit, on the charge of the information pursuant to which he was originally incarcerated. In re Barnes, supra; Chandler v. Fretag, supra. In sum, the petitioner shall be detained subject to the event of another trial in due course of law.
It is so ordered.
THOMAS, C.J., and TERRELL, HOBSON and O'CONNELL, JJ., concur.