# CASH *v.* CULVER, STATE PRISON CUSTODIAN.

No. 91. Argued January 22, 1959.—Decided February 24, 1959.

*Irwin L. Langbein,* acting under appointment by the Court, 357 U. S. 933, argued the cause and filed a brief for petitioner.

*Edward S. Jaffry,* Assistant Attorney General of Florida, argued the cause, *pro hac vice,* by special leave of the Court, for respondent. With him on the brief was *Richard W. Ervin,* Attorney General.

MR. JUSTICE STEWART delivered the opinion of the Court.

The petitioner is serving a 15-year prison sentence imposed by a Florida court after conviction by a jury of

burglary.[1]  He was not represented by counsel at the trial.  No appeal was taken, and the Supreme Court of Florida denied without a hearing a petition for habeas corpus which he later filed.[2]  Certiorari was granted to determine whether the circumstances alleged in the habeas corpus petition make this a case where the denial of counsel's assistance at the trial operated to deprive the defendant of the due process of law guaranteed by the Fourteenth Amendment.  357 U. S. 904.  For reasons to be stated, we hold that this is such a case.

The record here consists only of the habeas corpus petition and the Florida Supreme Court's bare order of denial.  With the case in that posture, the factual allegations of the petition must for present purposes be accepted as true.  *Hawk* v. *Olson,* 326 U. S. 271, 273.  Composed in the penitentiary, the petition, like many such documents, is heavily larded with irrelevant innuendoes, unsupported conclusions, and pretentious legalisms.  Within its confines, however, are to be found allegations of a chain of events which we now relate.

On December 6, 1954, the petitioner, an uneducated farm boy of 20, was first tried by a jury on the burglary charge.  At that trial he was represented by experienced counsel of his own choice.  At the conclusion of the evidence, the jury was unable to agree on a verdict, and a mistrial resulted.

The petitioner was then immediately placed in solitary confinement, where he remained awaiting retrial.  He first learned on the evening of February 20, 1955, that his new trial was to take place the next day.  Only a few days earlier he had learned through a prison official that his former lawyer had withdrawn from the case.  The

---

[1] A noncapital offense in Florida, punishable in this case by a maximum prison term of 20 years.  Fla. Stat., 1955, § 810.01.

[2] The petition was originally filed in that court in accordance with state procedure explained in *Sneed* v. *Mayo,* 66 So. 2d 865, 874.

petitioner's mother on his behalf had tried to engage a number of other lawyers to represent him, but they had all refused, telling her that the fee she could offer was inadequate, and the time for preparation too short.

At the opening of the second trial the petitioner asked the court for a continuance to give him time to employ a new lawyer, or in the alternative that the court appoint counsel for him. In making these requests the petitioner called the trial judge's attention to his youth, his lack of education and courtroom experience, and the sudden withdrawal of prior counsel.[3] The requests were denied, and the trial proceeded at once, with the petitioner left to conduct his own defense.[4]

His co-defendant, Allen, an alleged accomplice, pleaded guilty and testified for the State. Allen stated, among other things, that he and the petitioner in the company of two others had burglarized stores, stolen a truck, and engaged in a running gun battle with police. He further testified that he (Allen) had "pulled a $180,000 robbery" in New Orleans with two of the petitioner's older brothers,

---

[3] On this point the allegations of the petition are as follows: "Petitioner explained to the Court that he was not capable of representing himself, that he was only 20 years of age and was uneducated and had never heard a court trial except the one time he was tried on the same charge, and then he was represented by Mr. Carr, and that he did not know court procedure or how to conduct his defense, and told the court he had been closely confined in solitary at the Florida State Prison at Raiford, up until the night before, and therefore he had no opportunity to employ new counsel, since the Court had permitted his chosen counsel to abandon him in the face of trial, and it was an absolute necessity that the court grant a continuance, or, in the alternative, for the court to remedy the situation by appointing counsel to represent the petitioner."

[4] Under Florida law a trial court has an absolute duty to provide counsel only for an indigent defendant on trial for a capital offense. *Sneed* v. *Mayo*, 66 So. 2d 865, 872; *Johnson* v. *Mayo*, 158 Fla. 264, 28 So. 2d 585; Fla. Stat., 1955, § 909.21.

in which the petitioner had taken no part, and that one of these brothers had also participated in the crime for which the petitioner was on trial. Physical evidence was introduced, including a revolver stolen from the store the petitioner was charged with burglarizing, which had been found in Allen's possession. No evidence in the case except Allen's testimony connected Allen and the petitioner. It is not clear what, if any, objections were made to Allen's testimony, or whether he was cross-examined.[5]

On conviction, the petitioner, a first offender, was sentenced to the 15-year prison term he is now serving. Allen, an ex-convict, was sentenced to 10 years, but placed on probation. No charges were brought against the petitioner's brother or the fourth person named by Allen as a participant in the crime for which the petitioner was convicted.

In the 17 years that have passed since its decision in *Betts* v. *Brady*, 316 U. S. 455, this Court, by a traditional process of inclusion and exclusion has, in a series of decisions, indicated the factors which may render state criminal proceedings without counsel so apt to result in injustice as to violate the Fourteenth Amendment.[6] The

---

[5] The habeas corpus petition incorporates, among other things, excerpts from a newspaper account of the trial, a form of pleading to which the Florida Attorney General makes no objection in the present case. An excerpt from this newspaper account reads as follows: "While making objections and inquiring of the Judge and witnesses, Cash appeared unsure of himself. On several occasions he would start a sentence, then stop to rephrase it or start on another subject. Before making ,objections Cash raised his hand to attract the attention of the Judge, then in a halting manner would make his statement."

[6] See *Rice* v. *Olson*, 324 U. S. 786; *Canizio* v. *New York*, 327 U. S. 82; *De Meerleer* v. *Michigan*, 329 U. S. 663; *Foster* v. *Illinois*, 332 U. S. 134; *Gayes* v. *New York*, 332 U. S. 145; *Bute* v. *Illinois*, 333 U. S. 640; *Wade* v. *Mayo*, 334 U. S. 672; *Gryger* v. *Burke*, 334

alleged circumstances of the present case so clearly make it one where, under these decisions, federal organic law required the assistance of counsel that it is unnecessary here to explore the outer limits of constitutional protection in this area.

"Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair," the Constitution requires that the accused must have legal assistance at his trial. *Uveges* v. *Pennsylvania,* 335 U. S. 437, 441. Of particular relevance here are the decisions of the Court which have held the appointment of counsel necessary to a fair trial because of the complexity of the proceedings. *Rice* v. *Olson,* 324 U. S. 786; *Gibbs* v. *Burke,* 337 U. S. 773; and see *Williams* v. *Kaiser,* 323 U. S. 471, 475–476.

All that stood between the petitioner and a verdict of acquittal was the testimony of Allen—an admitted accomplice. Although Florida law does not require corroboration of an accomplice's testimony to sustain a conviction, *Land* v. *State,* 59 So. 2d 370, the defendant has a right to demand that the trial judge instruct the jury that the "evidence of an accomplice should be received by the jury with great caution." *Varnum* v. *State,* 137 Fla. 438, 449, 188 So. 346, 351. The Florida decisions also establish the right to cross-examine an accomplice witness as to whether he is testifying under an agreement for leniency, and even

U. S. 728; *Townsend* v. *Burke,* 334 U. S. 736; *Uveges* v. *Pennsylvania,* 335 U. S. 437; *Gibbs* v. *Burke,* 337 U. S. 773; *Quicksall* v. *Michigan,* 339 U. S. 660; *Palmer* v. *Ashe,* 342 U. S. 134; *Massey* v. *Moore,* 348 U. S. 105; *Pennsylvania ex rel. Herman* v. *Claudy,* 350 U. S. 116; *Moore* v. *Michigan,* 355 U. S. 155.

as to whether he believes that his testimony will be in his best interest. *Leavine* v. *State,* 109 Fla. 447, 147 So. 897; *Henderson* v. *State,* 135 Fla. 548, 555, 185 So. 625, 627 (concurring opinion). A layman would hardly be familiar with these rights.

Moreover, Allen's testimony concerning the petitioner's commission of other crimes and the commission of a crime by the petitioner's brother, who allegedly also participated in the burglary which was the subject of the trial, if not inadmissible in its entirety, certainly raised serious questions under Florida law. As the Florida Supreme Court has recently noted, "There are literally thousands of cases in this country discussing the admission of such evidence." *Padgett* v. *State,* 53 So. 2d 106, 108. The problems which this testimony raised were thus beyond the ken of a layman, and it was clearly the kind of testimony that could seriously damage a defendant in the eyes of a jury. Finally, the transcript of the petitioner's previous trial would have offered a lawyer opportunities for impeachment of prosecution witnesses, opportunities of which we cannot assume that a layman would be aware.[7]

For these reasons, the requirements of due process made necessary the assistance of a lawyer if the circumstances alleged in the habeas corpus petition are true. On the present record there is no way to test their truth. But the allegations themselves made it incumbent upon the Florida courts to determine what the true facts were.[8]

*Reversed.*

---

[7] The very fact that the jury failed to convict at the first trial, when the petitioner was represented by counsel, is at least some practical indication of the difference a lawyer's help at the second trial might have made.

[8] Counsel has advised us that a transcript of the trial proceedings can be made available by the court reporter.