**UNITED STATES** ex rel. Salvatore
**PENNISE, Petitioner,**

v.

Edward M. **FAY, Warden** of Greenhaven
State Prison, Stormville, New York, and
the People of the State of New York,
Respondents.

United States District Court
S. D. New York.

Oct. 18, 1962.

Maurice Edelbaum, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, for respondents. Gretchen W. Oberman, Vincent A. Marsicano, Asst. Atty. Gen., of counsel.

CASHIN, District Judge.

Petitioner is presently incarcerated in Greenhaven Prison, New York, as a second felony offender. He filed a petition for a writ of habeas corpus pursuant to Title 28 U.S.C. § 2242, alleging that his detention was illegal in that his first conviction, in the State of Idaho in 1941, was obtained without his being advised of his right to counsel and in ignorance of that right. In my Opinion filed August 3, 1962, D.C., 210 F.Supp. 275, I concluded that the petitioner has adequately demonstrated that he has exhausted the remedies available to him in the state courts, and thus has fulfilled the requirement of Title 28 U.S.C. § 2254. Since the reasons for that conclusion are stated in my prior Opinion, it would serve no useful purpose for me to reiterate them here.

Pursuant to my order, a hearing has been held concerning the circumstances of the petitioner's Idaho criminal proceeding. At the hearing the petitioner, who was represented by able counsel, was present and testified at length. Essentially the hearing showed the following:

The petitioner was born on March 7, 1922. The petitioner is literate; he graduated from an elementary school in Brooklyn, and attended a vocational high school for a few weeks. He has no history of mental deterioration or psychosis. From 1939 to 1941, he was attached to a Civilian Conservation Corps camp in the State of Idaho. In 1941 he was nineteen years of age and was one of the group leaders of the camp. He testified that on

the night of March 16, 1941 he returned to the camp after midnight and learned that something was going on in the mess hall between some men and a sex deviate; that he went to the mess hall, did not commit any act of perversion with the individual but gave him a beating and chased him out of the camp; that he then went to bed. The next day a sheriff appeared at the camp and took him into custody. While in custody, he had an altercation with his captain, came to blows with the latter, and was taken to jail. In jail he was told that there would be no judge available for nine months. He requested permission to communicate with his family in Brooklyn, but his request was denied. He was told that if he signed a paper admitting his crime and pleaded guilty, he would be put on a train to New York and would not have to wait nine months. He did so.

On March 21, 1941 he was arraigned in the chambers of the district judge of the Tenth Judicial District of the State of Idaho, at Orangeville, Idaho. He claims that it was at that time that he first learned that the crime with which he was being charged was a crime against nature. He claims that he protested, but the sheriff and deputy sheriff made him keep quiet. He was never advised of his right to counsel and was never given counsel. There is no evidence of waiver of counsel. He was thereupon, on the same day, sentenced to five to ten years in prison.

He was then taken back to the county prison and later to the Idaho State Penitentiary. At the latter place he was visited by a priest about a month later, to whom he told his story. Within months, on October 2, 1941, the petitioner was unconditionally pardoned by the Governor of the State of Idaho. The records of the case which respondent obtained from the State of Idaho are silent as to whether or not petitioner was represented by counsel or advised of his right to counsel. The judge who presided and imposed sentence is dead. There is no stenographic record of the Idaho proceedings.

In 1952 the petitioner was convicted of manslaughter in the first degree, in the County Court of Kings County, State of New York. Based upon the petitioner's Idaho conviction in 1941, he was sentenced as a second felony offender.

The petitioner claims that the Idaho proceedings were so lacking in fundamental fairness that they were in violation of his rights to due process of law. As a result of the hearing held in this case, I must agree. I conclude that the circumstances were such that the conviction of petitioner without counsel has here resulted in a clear constitutional infirmity.

At the hearing the petitioner established without contradiction that he was never given counsel, and at no time was the assistance of counsel offered or mentioned to him. He was at the time nineteen years of age, confronted with a serious criminal charge without a word being said in his defense. He was hurried through unfamiliar legal proceedings; to use the petitioner's words, the Idaho proceedings were "as foreign to me as if I were in a Russian courtroom." There is credible evidence that far from being advised of the consequences of his plea, he was told by the sheriff that he would be put on a train to return home to New York. The respondent offered no evidence contradicting this testimony, and I accept it.

The provision of the Sixth Amendment to the Federal Constitution, that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense, does not apply to a prosecution in a state court. Foster v. Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947). Nor does the due process clause of the Fourteenth Amendment require that counsel be made available to every defendant in all state criminal proceedings. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). In a long line of decisions, however, the Supreme Court has delineated those principles which determine when it is that federal organic law does require a state to give a criminal defendant the

opportunity to obtain the assistance of a lawyer. See, e. g., Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); Canizio v. New York, 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545 (1946); De Meerleer v. Michigan, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584 (1947); Gayes v. New York, 332 U.S. 145, 67 S.Ct. 1711, 91 L.Ed. 1962 (1947); Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); Uveges v. Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949); Quicksall v. Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188 (1950); Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951); Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954); Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1959); McNeal v. Culver, 365 U.S. 109, 81 S.Ct. 413, 5 L.Ed.2d 445 (1961); Reynolds v. Cochran, 365 U.S. 525, 81 S.Ct. 723, 5 L.Ed. 2d 754 (1961); Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed. 2d 442 (1962); Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). To be a denial of due process, it must be demonstrated that the criminal proceeding without counsel was rendered so apt to result in injustice as to be "fundamentally unfair." Cash v. Culver, 358 U.S. at 637, 79 S.Ct. 432, 3 L.Ed.2d 557. See also Betts v. Brady, 316 U.S. at 462, 62 S.Ct. 1252, 86 L.Ed. 1595; Uveges v. Pennsylvania, 335 U.S. at 441, 69 S.Ct. 184, 93 L.Ed. 127; Gibbs v. Burke, 337 U.S. at 781, 69 S.Ct. 1247, 93 L.Ed. 1686; Quicksall v. Michigan, 339 U.S. at 665, 70 S.Ct. 910, 94 L.Ed. 1188.

The petitioner claims, however, that the "shocking to the sense of justice" standard seems to be giving way to a more stringent rule which would provide that in state prosecutions the right to be heard comprehends the right to be heard by counsel. In view of the concurring opinions in the recent decision by the Supreme Court in Carnley v. Cochran, supra, the petitioner may indeed be proven to be correct by the future course of the law. But be that as it may, the petitioner has adequately shown in the present case that, even under the constitutional doctrine announced in Betts v. Brady, supra, and Cash v. Culver, supra, he is entitled to relief from his unconstitutional conviction. Even by an application of that more difficult standard, it is clear after an appraisal of the totality of facts in this case that the denial of counsel to petitioner constituted a denial of fundamental fairness.

The Supreme Court has repudiated the theory that by pleading guilty without the benefit of counsel a defendant is presumed to have thereby competently waived his right to counsel in a state proceeding. Rice v. Olson, supra. In like manner, the Court has recently stated in Carnley v. Cochran, supra, that it is impermissible to presume a waiver from a silent record. The Court held:– "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." 369 U.S. at 516, 82 S.Ct. at 890. Therefore, there can be no question of waiver in the instant case.

■ Respondent contends that petitioner's case is defective in that there has been no showing of mental or physical handicap, and that there is no claim that the charges or possible defenses were unduly complex. In answer to this contention, petitioner aptly cites United States ex rel. Savini v. Jackson, 250 F.2d 349 (2 Cir., 1957). In that case, Judge Brennan of the Northern District of New York sustained a writ of habeas corpus where the prisoner's prior conviction in the State of Michigan was based upon a plea of guilty to rape entered without assistance of counsel and without being advised of that right. The Second Circuit held that the plea entered under such circumstances was fundamentally unfair, and

adopted the following language of the lower court:

"Here there is no lack of intelligence; no charge of overreaching on the part of the prosecuting authorities; no indication of anything but kindly treatment on the part of the trial court. Nevertheless I cannot say that this petitioner has had the full measure of the protection which the law affords when he is arrested, arraigned and convicted in a period of forty-eight hours of a crime for which he might be confined for life without the aid or assistance of family, friends or advisers and without any understanding that he had the right to the experienced advice of an attorney before being required to enter his plea. * * * As far as the record before me is concerned, the circumstances of the Michigan conviction, * * * are such as to lead to the conclusion that same lacks the traditional protection which is afforded persons charged with serious crimes under our notions of justice. * * * " 250 F.2d at 352–353.

In order to negate the assertion by petitioner that the Idaho proceedings were so lacking in fundamental fairness that they violated his rights to due process of law, respondent relies upon the fact that petitioner has been represented by counsel in other criminal proceedings. The petitioner was actually represented by counsel in New York in June 1939 (prior to the date of the challenged conviction), when he pleaded guilty to petit larceny of a pocketbook. Subsequent to the Idaho conviction he was represented by counsel in criminal proceedings in 1942, 1945, 1947 and 1950 in the State of New York. From these facts the respondent would have me infer that the petitioner cannot be believed when he states that he was not informed of his right to counsel and that he was ignorant of that right. I do not agree. In the light of all the other evidence adduced at the hearing, the fact that the petitioner had previous experience in a state court in New York does not militate against a finding that the petitioner's case falls within that class in which the intervention of counsel was an essential element of a fair hearing. See United States v. LaVelle, 306 F.2d 216 (2 Cir. 1962); United States v. Tribote, 297 F.2d 598 (2 Cir. 1961). Also, that the petitioner knew enough to secure representation by counsel in New York *after* 1941 does not by any means disprove his claim that he was ignorant of that right in 1941 in Idaho. It is especially significant to point out that on these subsequent occasions the petitioner was more mature in age and no longer alone in a distant state far from the aid of his family and friends.

The writ is sustained to the extent that the Idaho conviction may not be used by a court of the State of New York for the purpose of increasing the petitioner's punishment as a multiple felony offender.

The petitioner is remanded to the custody of the respondent to be held by him pending proceedings to be promptly taken for the petitioner's return to the Kings County Court for resentence upon the 1952 manslaughter conviction.

It is so ordered.