UNITED STATES of America ex rel. David L. COLEMAN, Relator-Appellant,

v.

Wilfred L. DENNO, as Warden of Sing Sing Prison, Ossining, New York, Respondent-Appellee.

No. 100, Docket 27709.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1962.

Decided Jan. 24, 1963.

---

6. Haywood v. Briggs, 227 N.C. 108, 41 S.E.2d 289 (1947).

**458**

Norman Redlich, New York City, Daniel A. Gutterman, New York City, for appellant.

Edward S. Silver, Dist. Atty., Kings County, Louis J. Lefkowitz, Atty. Gen., of New York (William I. Siegel, Asst. Dist. Atty., Samuel A. Hirshowitz, First Asst. Atty. Gen., Gretchen White Oberman, Asst. Atty. Gen., of counsel), for appellee.

Before CLARK, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge.

This appeal comes to us from a denial of a writ of habeas corpus. Appellant is under sentence of death following a conviction for murder in the first degree in the County Court of Kings County, New York, on October 21, 1960. The question which appellant (petitioner) through his counsel asks this court to pass upon is: "Whether the failure of New York State to assign counsel to petitioner during the post-appellate stage of this capital case deprives petitioner of due process of law and equal protection of the laws." (Appellant's Brief, p. 3.) The actual question however, is less academic and cannot be couched in such generalities. A real person, David L. Coleman, has been convicted by a jury of murder and has been sentenced to death. Our appellate review must place a spotlight on each stage of the process by which this judgment was obtained and affirmed. The question is: "Has this petitioner been deprived of any of the constitutional rights to which he was entitled during the various proceedings conducted by and in the State of New York which place petitioner in the position in which he now finds himself?"

The conclusion that petitioner was entitled to counsel particularly in a capital case is beyond dispute. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Whether he was accorded these rights depends upon the facts.

Upon the trial petitioner was represented by assigned counsel. Section 308 of the New York Code of Criminal Procedure provides for assignment of counsel at the time of arraignment.

Upon his appeal as of right (§ 517, N.Y.Code Crim.Proc.) to the New York Court of Appeals, petitioner was represented by assigned counsel. The conviction was affirmed (People v. Coleman, 10 N.Y.2d 765, 219 N.Y.S.2d 612, 177 N.E.2d 53). Petitioner thereupon *pro se* moved for reargument and assignment of counsel for this purpose. The brief submitted in support of the motion states: "The motion and application for counsel were made with the voluntary assistance of Professor Norman Redlich of New York University Law School, who is also counsel to the New York Committee to Abolish Capital Punishment." Professor Redlich already had been in touch with petitioner's counsel as early as July 1961 because, as he testified, the Committee to Abolish Capital Punishment often assisted in clemency appeals and also suggested other post-appellate stages issues. He and an attorney, Mr. James M. Brachman, prepared a supplemental brief in support of the motion for reargument. Professor Redlich also prepared a memorandum which was submitted to the Governor's office and which resulted in a respite being granted to petitioner. The motion was granted, counsel was assigned and the motion was amended to include a motion to amend the remittitur (10 N.Y.2d 815, 221 N.Y.S.2d 520, 178 N.E.2d 234). The reargument of the conviction affirmance was denied but the remittitur was amended to state that a federal question as to violation of petitioner's rights under the Fifth and Fourteenth Amendments of the United States Constitution because of certain remarks of the prosecutor in summation had been presented. The Court of Appeals found no such vio-

lation (10 N.Y.2d 1008, 224 N.Y.S.2d 686, 180 N.E.2d 265). A 45 days' stay of execution (obtained under a *pro se* application prepared by Professor Redlich and Mr. Brachman and also sought orally by Professor Redlich) was granted by the Chief Judge of the Court of Appeals to permit an application to the Supreme Court for a writ of certiorari.

Petitioner then applied to the New York Court of Appeals for the assignment of counsel to aid him in preparing his petition and to perform any other appropriate services. This application was denied on December 7, 1961. On December 13, 1961, Professor Redlich and his colleague, Mr. Brachman, prepared a *pro se* application for petitioner requesting assignment of counsel to prepare the petition for the writ. This application was denied on January 11, 1962. A third stay of execution to February 15, 1962, was then granted by the Chief Judge. This was obtained by Professor Redlich personally. While the time to file the petition for the writ was running, Professor Redlich and Mr. Brachman prepared an application for reconsideration of the denial (December 7, 1961) of the prior application for the assignment of counsel. They were also working on petitioner's application for "a writ of certiorari dealing with the question of assignment of counsel". The application for the writ made on February 14, 1962, sought (1) to review the New York Court of Appeals order (January 11, 1962) denying his application for assignment of counsel to prosecute a writ of certiorari and (2) to extend his time to review the affirmance of his conviction until the assignment of counsel issue had been resolved. All necessary documents were prepared by Professor Redlich and Mr. Brachman. Professor Redlich also advised the Supreme Court that should it grant the writ he "would be available to accept the Court's assignment as counsel if that be the pleasure of the Court with respect to the issue of whether petitioner has been denied his rights under the Fourteenth Amendment by virtue of New York State's failure to assign counsel."

On February 22, 1962, the New York Court of Appeals denied appellant's motion (11 N.Y.2d 769, 227 N.Y.S.2d 19, 181 N.E.2d 763) and on March 19, 1962 the Supreme Court denied the petition for the writ of certiorari (Coleman v. State of New York, 369 U.S. 826, 82 S.Ct. 843, 7 L.Ed.2d 791).

Upon the habeas corpus hearing ordered by the District Court to obtain "information under oath as to the legal services that petitioner had available to him subsequent to the denial of reargument by the Court of Appeals of the affirmance of his conviction", Professor Redlich described in detail the nature and extent of his services. The District Court found that the "petitioner had the maximum in representation from the day the Court of Appeals of the State of New York affirmed his conviction." His conclusions were that petitioner had not been "denied due process or the equal protection of the law because Professor Redlich, his associates or some other attorney, was not specifically named in an order of the Court of Appeals to perform the functions which in fact they did perform on the petitioner Coleman's behalf and "that there is no obligation on the part of the state to *assign counsel* to an indigent defendant who has had the benefit of counsel other than by assignment." The District Court, therefore, believed that such "exemplary representation" made "moot" the question which they sought to raise. However, only to a limited extent is the general question posed moot.

Petitioner does not contend that he has been deprived of any of the trial and appellate benefits which should be accorded in all capital cases, including counsel at all stages and a transcript of the testimony. Rather, he argues that after exhaustion of all State appellate procedures the State is under a duty imposed by the United States Constitution to appoint counsel to hover over him

until the death sentence has been carried out.[1]

This petitioner, however, goes beyond the confines of the State's courts. He finds unconstitutionality in the State's failure to provide counsel to draft his petition for a writ of certiorari, federal habeas corpus and any other federal procedures which ingenuity of counsel might conjure up. Were this scheme carried to its logical conclusion, the State would have to assign personal counsel for each of the inmates of its various prisons. To represent their clients properly, these State-appointed counsel would have to review at least on a weekly basis the decisions of the Supreme Court and other appellate courts looking for some case which might cause some doubt as to the constitutionality of the procedures which were used to bring their clients to their present abodes.

More fortunate than many, petitioner here has had the advantage of the services of two skillful counsel during the period of his post-appellate incarceration. To be sure they claim that they have restricted their efforts to the single question of absence of any provision for State-appointed counsel during the post-appellate period but the fact remains that petitioner had available to him at all times their advice and their services.

The respondent here, not content to rely upon mootness, commendably faces the broader issue and poses the question: "Does the refusal of New York through its Court of Appeals to assign to a defendant, convicted in a capital case and sentenced to death, counsel to serve in post-appellate and Federal Court proceedings constitute a violation of the due process and equal protection clauses of the Fourteenth Amendment?"

Petitioner's contention so far exceeds the claims which have been looked upon with favor by the courts in their efforts to give every constitutional protection to all criminal defendants that no precedent is to be found for such a proposition. The decisions cited are primarily useful only to chart the area thus far surveyed.

At once may be eliminated the right to counsel at the trial level cases because petitioner had counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; McNeal v. Culver, 365 U.S. 109, 81 S.Ct. 413, 5 L. Ed.2d 445; Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4; Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 Ed.2d 557; Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114.

The question of assignment of counsel on appeal decided by the New York Court of Appeals adversely to the defendant in People v. Breslin, 4 N.Y.2d 73, 172 N.Y.S.2d 157, 149 N.E.2d 85, is academic here because that court did assign appellate counsel in this case.

The cases dealing with transcripts, filing fees, assignment of counsel to test the right to appeal and related matters merely reveal the philosophy that no impediment or burden should be placed upon the right to contest in an appellate court the propriety of the conviction.[2]

---

1. If this argument be sound, had the jury recommended clemency and a life sentence been imposed, the period during which he could thus demand the continuous services of counsel would be for the balance of his life.

Furthermore, unless some artificial line be created and "equal protection" have its limits, the second degree murderer with his thirty-year sentence and the bank robber with his twenty years also should have counsel.

2. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (transcripts);

Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959) (filing fees); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) (filing fees— habeas corpus); Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957) (counsel to settle trial transcript); Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957) (counsel to petition for leave to appeal from federal conviction); Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21 (1962) (same).

The protection afforded by the State of New York to defendants unable to afford counsel is most ample. In capital cases when requested counsel must be assigned, counsel is compensated (up to $1,500 for one; up to $2,000 where two or more are assigned), daily copy of the transcript and even fees of necessary expert witnesses up to $1,000 are to be paid at County expense. Upon the appeal preparation and printing of the record is also a charge against the County (Sec. 485, N.Y.Code Crim.Proc.).

Lastly there remains for consideration the respective roles to be assumed by State and Federal courts in the situation now confronting us. The petition for a writ of certiorari is addressed to the Supreme Court. Surely that Court in a meritorious case would assign counsel. If habeas corpus were sought in a federal court the district court would be the forum for the application. Were a defendant in a federal court action to apply for assignment of counsel in the State court, there should be little doubt that denial would not be a violation of the defendant's Fourteenth Amendment rights. Appointed counsel should be responsible to the appointing court in which the case or proceeding is being heard.

Proper protection of the defendant may require "the guiding hand of counsel at every step in the proceedings against him" (Powell v. Alabama, supra), but when all proceedings have been concluded it would seem that the Constitution had well fulfilled its function in according the rights which this defendant has been accorded.

SMITH, Circuit Judge (concurring).

I concur in the result. I agree that the question is not necessarily "moot" because of the service voluntarily provided. On the merits, while the post appellate period may well be most critical, I do not believe that due process required the state to furnish counsel to search out remedies possibly available in tribunals outside its own judicial system. Provision of such counsel in capital cases may well be considered desirable and within the powers of the state. However, failure so to provide can hardly be said to make the precedent conviction and affirmance on appeal, during all the steps of which counsel have been provided, abhorrent to our present conception of a system of ordered justice.