**Roland F. BIRD, Petitioner,**

v.

**Maurice SIGLER, Warden, Respondent.**

**Richard R. HAYS, Petitioner,**

v.

**Maurice H. SIGLER, Warden, Respondent.**

**Timothy Leroy TUCKER, Petitioner,**

v.

**Maurice H. SIGLER, Warden, Respondent.**

**Billy R. SHAPLEY, Petitioner,**

v.

**The STATE OF NEBRASKA, Warden Maurice H. Sigler, Respondent.**

**Civ. 749L, 761L, 766L, 767L.**

United States District Court
D. Nebraska.

Dec. 29, 1964.

Harvey L. Goth, Lincoln, Neb., for petitioner Roland F. Bird.

Richard H. Williams, Asst. Atty. Gen., of Nebraska, Lincoln, Neb., for respondent in No. 749L.

Donald W. Hand, Lincoln, Neb., for petitioner Richard R. Hays.

C. C. Sheldon, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for respondent in No. 761L.

Allen L. Graves, Lincoln, Neb., for petitioner Timothy Leroy Tucker.

Mel Kammerlohr, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for respondent in No. 766L.

Frank C. Sidles, Lincoln, Neb., for petitioner Billy R. Shapley.

C. C. Sheldon, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for respondent in No. 767L.

VAN PELT, District Judge.

These cases are before the court on separate petitions for writs of habeas corpus. Each applicant is presently incarcerated in the Nebraska Penal and Correctional Complex at Lincoln, Nebraska. Counsel have been appointed and the court has held a hearing on the claims raised by each applicant.

The State has not raised the procedural issue of exhaustion of state remedies and apparently concedes that each applicant has sufficient standing to petition the federal courts for post-conviction relief. As the court can find no procedural obstacles which might preclude its immediate determination of the merits of these applications, there is no need for further discussion of jurisdiction or standing.[1]

The occasion for the consolidation of these matters into one memorandum opinion is the common question of law raised by each applicant. The court is now faced with a determination of the "critical" nature of a preliminary hearing in Nebraska under circumstances wherein a plea of guilty is entered, and must at this time reconsider its "Memorandum and Order" previously entered in Thunder Hawk v. Sigler, 759L, decided June 26, 1964.[2] Each petitioner, however, has presented an entirely different and distinct set of facts in support of his application for issuance of the "Great Writ." Consequently, the court's determination of the critical nature of a preliminary hearing is not necessarily dispositive in each instance, but will merely serve as a guide line in resolving the merits of the respective applications.

The ultimate question presently before the court is whether a conviction on a plea of guilty, either with the assistance of counsel or after counsel is effectively waived, is vitiated when, prior to the acceptance of this plea in district court, the accused enters a plea of guilty at a preliminary hearing without the benefit of counsel or without being properly advised of his constitutional rights.

This precise question, perhaps, can be more graphically illustrated by the following synopsis of facts which give direct rise to the problem. A preliminary hearing in Nebraska has the functional purpose of determining whether the offense charged has been committed and whether there is probable cause to believe the defendant committed it.[3] There is no authority for the magistrate or other public official conducting such

---

1. See Shupe v. Sigler, 230 F.Supp. 601 (D. Neb.1964) wherein this court held that a Nebraska state prisoner seeking federal habeas corpus need not first apply to state courts for relief because the scope of habeas corpus in Nebraska does not include a collateral attack of a conviction on constitutional grounds. The correctness of this determination was borne out eight days later when the Nebraska Supreme Court decided in Case v. State, 177 Neb. 404, 129 N.W.2d 107 (1964) that state habeas corpus was not available to discharge a prisoner from a sentence of penal servitude if the court imposing it had jurisdiction of the offense and of the person charged with the crime, and the sentence was within the power of the court.

2. In Thunder Hawk this court decided that the lack of counsel at a preliminary hearing wherein the defendant pleaded

guilty was not a valid claim upon which habeas corpus relief could be predicated since State v. Snell, 177 Neb. 396, 128 N.W.2d 823 (1964) held that such pleas were inadmissible should the defendant subsequently choose to plead not guilty. Necessarily, Thunder Hawk is overruled by the court's decision this day.

3. Neb.Rev.Stat. § 29–506 (Reissue 1956) provides *inter alia:* "If upon the whole examination, it shall appear that no offense has been committed or that there is no probable cause for holding the accused to answer for the offense, he shall be discharged; but if it shall appear that an offense has been committed and there is probable cause to believe that the person charged has committed the offense, the accused shall be committed to the jail of the county in which the same is to be tried, there to remain until he is discharged by due course of law * * *."

a hearing either to require or accept a plea from an accused. It is uncontroverted, however, that in many instances an accused, including the present petitioners, has been asked to enter a plea at this stage of the proceedings without the benefit of counsel. In addition, there is no provision for the appointment of counsel in Nebraska until the arraignment stage of the proceedings in district court and consequently the indigent accused could not obtain the services of counsel at this stage of the proceedings even if requested.[4]

Until recently, as a matter of local law, these pleas of guilty at the preliminary hearing were admissible into evidence against the accused if there should subsequently be a jury trial. Wilson v. Soloman, 172 Neb. 616, 111 N.W.2d 372 (1961); Adams v. State, 138 Neb. 613, 294 N.W. 396 (1940). However, in State v. Snell, 177 Neb. 396, 128 N.W. 2d 823 (1964) the Nebraska court ruled that such pleas are not admissible in the absence of counsel or an effective waiver of counsel at the time they are given.

The present petitioners all pleaded guilty at the preliminary hearing stage without the benefit of counsel, and in each instance a plea of guilty was subsequently entered at arraignment in the district court after counsel was either appointed or effectively waived by the accused. It is the position of the Attorney General that this subsequent plea of guilty cured any prior existing defect in the proceedings which might have vitiated the conviction, and furthermore, the effect of the Nebraska Supreme Court's ruling in State v. Snell, supra, is to make the preliminary hearing a "noncritical" stage since there can now be no resulting prejudice.

The ultimate question of whether the lack of counsel at these preliminary hearings vitiated the subsequent convictions and sentences can be broken down into five separate sub-parts, and the court feels constrained to examine each such aspect in some detail. These factors which must be considered are (1) the retroactivity of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963); (2) the applicability of the Gideon principles to a plea of guilty; (3) the need for an accused to make a formal request for counsel; (4) the critical nature of a preliminary hearing in Nebraska prior to State v. Snell, supra; and (5) the problem of an effective waiver of counsel.

(1) *Retroactivity of Gideon.* The retrospective application of Gideon v. Wainwright is not, in the opinion of the court, an open question, and there would be sufficient justification for merely stating this to be the law, accompanied of course with sufficient citation of authority. However, since the question has yet to be faced in this District and has not been directly discussed by the Court of Appeals for the Eighth Circuit, the court feels justified in briefly reviewing this problem.

The Supreme Court has applied the Gideon principles retrospectively dating back to 1959. Doughty v. Maxwell, 372 U.S. 781, 83 S.Ct. 1106, 10 L.Ed.2d 139 (1963), and one group of at least sixteen cases "remanded for further consideration in the light of Gideon v. Wainwright" in a per curiam decision prompted a dissenting opinion by Mr. Justice Harlan wherein he took the position that the question of retroactivity should be

---

4. Neb.Rev.Stat. § 29-1803 (Supp.1963) makes provision for the appointment of counsel in Nebraska "when any person *shall be indicted* for an offense which is capital or punishable by imprisonment in the Nebraska Penal and Correctional Complex * * * if the prisoner has not the ability to procure counsel." (Emphasis added.) Neb.Rev. § 29-1804

(Supp.1963), which authorizes a public defender system in certain counties, provides that it shall be the duty of the public defender "to defend all persons who shall be indicted or informed against * * *." (Emphasis added.) A preliminary hearing in Nebraska is a prerequisite to a prosecution by information. Neb.Rev.Stat. § 29-1607 (Reissue 1956).

decided only after "informed and deliberate consideration."[5]

Even if the question of retroactivity were an open one, this court would probably be bound by what is implicit in the Eighth Circuit's holding in Nolan v. Nash, 316 F.2d 776 (8th Cir. 1963). In denying the writ to a petitioner attacking a 1942 conviction, the court applied the standards of Gideon v. Wainwright, concluding that the absence of counsel at a preliminary hearing does not vitiate a conviction where the accused pleaded not guilty. Recently, the Second Circuit sitting *in banc* considered this problem and a majority of the court concluded that Gideon was completely retroactive. United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir. 1964), cert. den. 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964).

■ There is in all good conscience and reality no choice but to apply the principles of Gideon retrospectively. Certainly it must relate back at least to the Gideon conviction itself on August 4, 1961. To cut off recognition of a defendant's constitutional right to counsel at this point is not only pure fortuity, but is violative of the spirit and purpose of those constitutional guarantees which Gideon seeks to secure.[6] "Once it is acknowledged that a conviction under review was obtained in violation of the constitutional right to counsel, a new trial should be awarded and it should make no difference whether the violation occurred before or after the Gideon decision." Jones v. Cunningham, 319 F.2d 1, 5 (4th Cir. 1963) (concurring opinion by Chief Judge Sobeloff). This concept is very ably expressed in United States ex rel. Durocher v. LaVallee, supra, 330 F.2d at 312, wherein it is stated:

"We do not deal here, however, with considerations of *res judicata* and vested rights, but with the question whether, consonant with our society's conceptions of due process and general constitutional law, we could deny the constitutional right enunciated in Gideon to those who happened to be tried before the decision was handed down. Thus to hold would be to assign a lower constitutional status to pre-Gideon prisoners who were denied the right to counsel, a right so "fundamental and essential to a fair trial" that it is made obligatory upon the States by the Fourteenth Amendment to the United States Constitution; a right that has been characterized by the Court as a "basic minimal" right vouchsafed by the Constitution, Rideau v. State of Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 10 L.Ed.2d 663."

■ (2) *Effect of a Guilty Plea.* Unlike Gideon and many of the ensuing cases applying its teachings, the petitioners now before the court were all convicted after entering pleas of guilty. It is entirely clear, however, that there is no valid distinction between the rights of an accused to counsel where he pleads guilty and where he pleads not guilty. In Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964), the Supreme Court in a *per curiam* decision reversed an Ohio Supreme Court decision denying petitioner relief where he was convicted on a guilty plea and did not

5. Pickelsimer v. Wainwright, 375 U.S. 2, 3, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963). In addition, Mr. Justice Harlan departed "from [his] usual practice of not noting a dissent to a denial of certiorari with which [he does] not agree" in LaVallee v. Durocher, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964) wherein the Court denied certiorari to a Second Circuit decision applying Gideon retroactively.

6. "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." Gideon v. Wainwright, 372 U.S. at 344, 83 S.Ct. at 796.

make an affirmative request for counsel. Lower federal courts voicing opinion on this issue have held that there can be no valid distinction between the accused who pleads guilty and the one who pleads not guilty insofar as his right to counsel is concerned. United States ex rel. Durocher v. LaVallee, supra; United States ex rel. Thomas v. Murphy, 227 F. Supp. 742 (N.D.N.Y.1964).

■ (3) *Failure to request counsel.* As must by now be apparent, Doughty v. Maxwell, supra, is also dispositive of this issue. The Ohio Supreme Court had decided that the failure to request counsel destroyed any possibility of collateral relief where the petitioner pleaded guilty without the benefit of counsel. This was reversed on the authority of Gideon and Carnley v. Cochran, 369 U.S. 506, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962). That a request for counsel is not necessary where an accused is constitutionally entitled to legal assistance is a firmly established principle of long standing. In Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945) the Court, in overturning a decision by the Nebraska Supreme Court, stated:

> "A defendant who pleads guilty is entitled to the benefit of counsel, and a request for counsel is not necessary. It is enough that a defendant charged with an offense of this character [burglary] is incapable adequately of making his defense, that he is unable to get counsel, and that he does not intelligently and understandingly waive counsel. Whether all these conditions exist is a matter which must be determined by evidence where the facts are in dispute." 324 U.S. at 788–789, 65 S.Ct. 989, 991, 89 L.Ed. 1367.

■ The failure to make a formal request for counsel cannot be fatal to any of the applicants in these proceedings.

The rights which are guaranteed to all citizens under our Constitution do not depend upon whether a formal request has been made in an attempt to secure such rights. Although the request for counsel or lack thereof is not determinative of a defendant's successful collateral attack of a conviction on Sixth Amendment grounds, it does have some bearing on the quantum of proof necessary to establish nonwaiver. See Moore v. People of State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Rice v. Olson, 324 U.S. 786 (1945); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). This question, however, will be more fully developed within this memorandum opinion.

■ (4) *Critical stage.* As the court has indicated, the position taken by the Attorney General in these cases has been that the preliminary hearing stage in a Nebraska criminal proceeding is not a critical stage for the reason that an accused cannot irretrievably forfeit any rights by a waiver of preliminary hearing, and for the additional reason that under State v. Snell, supra, a plea of guilty entered at this hearing is not admissible against an accused in a subsequent proceeding. The court cannot accept the arguments of the Attorney General *in toto*,[7] but feels constrained to adopt the position that the preliminary hearing in Nebraska does become a critical stage when, like those situations now before the court, a defendant is required to enter a plea without counsel, the plea entered is one of guilty, and at the time the plea was entered it was thought such would be admissible should a subsequent trial become necessary.

The critical degree of any particular stage in criminal proceedings is not dependent upon the tag or label given that stage, but upon the manner in which the substantive and procedural rights of a defendant may be affected at such pro-

---

7. This court does, however, adhere to the view that a preliminary hearing is not in and of itself a critical stage in the proceedings, and that lack of counsel at such a hearing is not fatal where no plea or a plea of not guilty is taken. See e. g. Ronzzo v. Sigler, 235 F.Supp. 839 (D.Neb. 1964); Connolly v. Sigler, 642L (unreported).

ceeding. Such is the understanding of the court of what is implicit in the series of decisions beginning with Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1938) down to and including Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). It was in Powell that Mr. Justice Sutherland so aptly stated the necessity for counsel in the following terms:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he had a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him." 287 U.S. at 68–69, 53 S.Ct. at 64.

Since the announcement of these basic principles in Powell, we have been witness to an evolutionary-like trend beginning with Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) and culminating in Gideon v. Wainwright, supra, and Escobedo v. State of Illinois, supra.[8] An accused may thus become entitled to counsel from the very moment "our adversary system begins to operate." Escobedo v. Illinois, 378 U.S.

at 492, 84 S.Ct. at 1766. Whether or not an accused does in fact become entitled to the assistance of counsel at any one particular stage is dependent upon the likelihood of any resulting prejudice which may befall and which could do irreparable damage to any defense the accused may wish to interpose. The court is not unmindful of the language appearing in Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) and reaffirmed in White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) to the effect that a court should not stop to determine whether a defendant was prejudiced, but in fact whole-heartedly agrees that such must be the applicable rule in order to effectively safeguard a defendant's Sixth Amendment rights. Yet the fact that we do not look in retrospect to determine whether a defendant was prejudiced does not lend itself to the conclusion that we cannot determine whether prejudice *could have resulted.*

This conclusion is borne out not only by a realistic examination of the significant Supreme Court decisions, but by the conclusions drawn by many of our Courts of Appeals. For example, in United States ex rel. Cooper v. Reincke, 333 F.2d 608, 379 U.S. 909, 85 S.Ct. 205, 13 L.Ed. 181 (2d Cir. 1964) the Second Circuit decided that the failure to supply a defendant counsel at a Connecticut probable cause hearing did not deprive him of a fair trial since he pleaded not guilty at this proceeding and at the trial he had every opportunity to present any defense which was available to him initially. The Eight Circuit has reached an identical conclusion in Nolan v. Nash, supra, where a plea of not guilty was entered without counsel at a Missouri

---

8. The decisions subsequent to Betts but prior to Gideon applied the fundamental fairness concept, recognizing that certain factors existed which would make it impossible for a defendant to have a fair trial without the aid of counsel. See e. g. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1959); Moore v.

State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Com. of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Uveges v. Com. of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945).

preliminary hearing. See also, Latham v. Crouse, 320 F.2d 120 (10th Cir. 1963).

In DeToro v. Pepersack, 332 F.2d 341 (4th Cir. 1964), cert. den. 379 U.S. 909, 85 S.Ct. 198, 13 L.Ed.2d 181, the question of when a critical stage in the proceedings has been reached was thoroughly analyzed, the court making the following observation:

> "Thus, the thrust of Powell's admonition that an accused has a right to counsel 'at every step in the proceedings against him,' as borne out by subsequent decisions, including Hamilton and White, seems to be that if the effectiveness of legal assistance ultimately furnished an accused is likely to be prejudiced by its prior denial, the earlier period may be deemed a critical stage in the judicial process and a conviction obtained in such circumstances is rendered invalid. We find nothing in the Supreme Court decisions, however, that would permit us to extend the duty of the State to appoint counsel in proceedings where even the likelihood of later prejudice arising from the failure to appoint is absent." 332 F.2d at 343–344.

Applying these principles to the situations now before the court, the conclusion is increasingly evident. An accused under the circumstances of these cases,[9] entering a plea of guilty at a preliminary hearing without the benefit of counsel and without being properly advised of his constitutional rights, has been denied the assistance of counsel contrary to the Sixth Amendment guarantees, and can properly invoke the post-conviction remedy of habeas corpus.[10]

It is immaterial, as far as these petitioners are concerned, that subsequent to their commitment the Nebraska Supreme Court reversed its position on the admissibility of a guilty plea at a preliminary hearing should the accused subsequently determine to go to trial. Certainly at the time these pleas of guilty were accepted it was generally understood that no roadblocks existed to bar their subsequent admissibility. This fact is borne out not only by the prior decisions of the Nebraska Supreme Court but by the testimony which developed at these hearings. Then too, from the standpoint of the defendant who has once pleaded guilty to an offense, his conviction is assured. In the accused's own mind, since his guilt has been admitted, the subsequent denial of the alleged crime may conceivably bring upon him not only the wrath of a prosecuting attorney, whose work load has been increased, but also the scorn and indignation of the sentencing judge.

In each of these cases now before the court the petitioners were afforded the services of appointed counsel in district court where the formal pleas of guilty were entered and accepted at arraignment. It is difficult to visualize the effective assistance of this subsequently appointed counsel as not being prejudiced. Prior to June 24, 1964, based on prior decisions, a lawyer would conclude that the plea at the preliminary hearing would be admissible at a trial. There is undenied evidence in one or more of the instant cases that lawyers known to the court to have had experience in the criminal defense field, so advised. The handicap in the presentation of any de-

---

**9.** This court is not passing on whether a plea of guilty at a preliminary hearing without the benefit of counsel would vitiate a subsequent plea of guilty in a post-Snell situation, nor does the court mean to intimate what its decision would be should such a question ultimately be presented.

**10.** The court's feeling as to the correctness of this conclusion receives additional confirmation from a recent opinion by Judge Murray of the District of Montana.

Therein it was held that a guilty plea at a preliminary hearing without the benefit of counsel was not cured by a subsequent waiver of court-appointed counsel and plea of guilty in the district court on arraignment, and that a defendant so circumstanced had been "denied his right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States." Alden v. State of Montana, 234 F.Supp. 661 (D.Mont.1964).

fense under such circumstances, prior to Snell, was obvious. The defendant himself would be somewhat reluctant to put the State to its burden when his conviction has been all but insured by the prior admission. "A trial judge knows without elaboration that the moment when a defendant is called upon to plead is the most critical stage in every felony criminal proceeding." United States ex rel. Thomas v. Murphy, 227 F.Supp. 742 at 744. The plea of guilty having been extracted without affording the defendant the benefit of an attorney's advice, "One can imagine a cynical prosecutor saying: 'Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial.'" Ex parte Sullivan, 107 F.Supp. 514 at 518–519 (D.Utah 1952).

Although the Attorney General's office has not furnished the court written briefs in any of these cases, it was argued to the court that State v. Snell, supra, should be applied retroactively thus making a preliminary hearing a non-critical stage regardless of the then existing Nebraska law on the admissibility of the plea at a trial. Although the court does not doubt but that Snell has retrospective application, this approach fails to consider two very important facets of this problem. First, the crucial question is the likelihood of possible resulting prejudice from the entry of the guilty plea without the advice of counsel. The likelihood in a pre-Snell situation is certainly immense when subsequently appointed counsel was forced to advise his client that as far as he knew the plea would be allowed into evidence by the trial court. There is also the coercive effect on the accused himself. These factors have already received considerable attention herein and merit no further discussion.

A second aspect of the Snell decision that negates the argument propounded by the Attorney General's office is the foundation on which the decision itself rests. The rule excluding a plea of guilty entered at a preliminary hearing from evidence at trial is not a procedural or exclusionary rule of evidence, but has its roots in the Constitution itself—in particular, the Sixth Amendment. The purpose behind the decision in State v. Snell is not a preventive measure against abusive interrogation or police practices by excluding statements or pleas or the fruits thereof, but its purpose is to insure a fair trial to an accused.

"The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." Gideon v. Wainwright, 372 U.S. at 344, 83 S.Ct. at 796, 9 L.Ed.2d 799.

The rule in Snell is simply that a man has not been accorded a fair trial in terms of our federal Constitution where a plea of guilty entered at a prior stage without the benefit of counsel is admitted into evidence at the trial. The Nebraska court did not rule that all guilty pleas made at preliminary hearings are inadmissible at trial, but only those entered where there was no representation by counsel or no effective waiver of counsel. To insure Mr. Snell a fair trial the Nebraska court excluded the plea from evidence. This court has reached the same conclusion as that reached by the Nebraska court, viz., it is constitutionally impermissible to allow a man to enter a plea of guilty at a preliminary hearing without the benefit of counsel or an effective waiver thereof. These cases, however, are not being heard on appeal so the remedy of excluding the evidence is unavailing. However, if this court should find that counsel was not effectively waived it too can order a new trial.

■ (5) *Waiver*. There remains only the question of waiver. A habeas corpus petitioner collaterally attacking the judgment of conviction on the ground that he was denied his constitutional right to counsel has the burden of showing that he was not only denied counsel but further that he did not intelligently waive this right. Thus the burden is on petitioner to prove both elements of his case by a preponderance of the evidence. Johnson v. Zerbst, supra; Moore v. State of Michigan, supra; Palumbo v. State of New Jersey, 334 F.2d 524 (3d Cir. 1964).

■ The question of waiver is one for determination by the court after all the circumstances and factors have been taken into consideration. However, a finder of waiver of the right to counsel at a critical stage in the proceedings "is not lightly to be made," Moore v. State of Michigan, supra, nor can any inference or presumption of waiver be drawn from a plea of guilty. Rice v. Olson, supra. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, supra.

■ Although not binding upon this court, highly persuasive is the criteria of waiver applied by the Nebraska Supreme Court in State v. Snell, supra. The evidence indicated that the defendant stated he did not care for counsel at the preliminary hearing, but there was no evidence that he was advised of his right to appointed counsel. Under such circumstances the Nebraska court, citing Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), ruled that the record failed "to show affirmatively an effective waiver of the right to counsel." The court is in accord with this conclusion. A knowing and intelligent waiver can only be made when there is complete awareness of all the facts and circumstances, and as such the right to counsel cannot, in the judgment of this court, be waived by one who does not have knowledge of his right to appointed counsel. In addition this court fully recognizes that a knowing and intelligent understanding of the pending charges by an accused is one matter, but understanding and comprehending possible defenses is an entirely different problem.

The court having fully discussed and reached its conclusion as to what must be the applicable law, the cases of these individual petitioners can now be decided.

[Judge Van Pelt then proceeded to discuss the individual facts of the Bird, Hays, Tucker and Shapley cases, granting writs of habeas corpus to Bird and Hays and denying writs to Tucker and Shapley.]