**UNITED STATES of America ex rel. Charles R. NOLL, Relator,**

v.

**Edward M. FAY, as Warden of Green Haven State Prison, Stormville, New York, Respondent.**

United States District Court
S. D. New York.
May 29, 1963.

Anthony F. Marra, Legal Aid Society, Leon B. Polsky, New York City, of counsel, for relator.

Louis Lefkowitz, Atty. Gen. State of New York, Ronald Offenkrantz and Stephen Rubin, Deputy Asst. Attys. Gen., of counsel, for defendant.

EDELSTEIN, District Judge.

Petitioner, presently incarcerated at Greenhaven State Prison, New York, has brought a petition for a writ of habeas corpus, 28 U.S.C. § 2242. Petitioner was convicted on September 14, 1949, in the County Court of Nassau County, New York, on two counts of forgery in the second degree and was sentenced as a second felony offender to a minimum term of five years to a maximum term of twenty years on each count, the sentences to run concurrently. N.Y.Penal Law, McK.Unconsol.Laws, c. 40, § 1943. The predicate for the second felony offender sentence was petitioner's conviction on May 10, 1943, in the Circuit Court of Jackson County of the crime of uttering a forged instrument. Fla.Stat. Ch. 831,

§ 831.02 (1941).[1] In his papers, petitioner claimed that he was not advised of his right to obtain counsel of his choosing and that he was ignorant of that right. He contends that the Florida conviction which was imposed upon him without having provided him with the opportunity to avail himself of the assistance of counsel was so lacking in fundamental fairness that it was violative of due process as guaranteed by the Fourteenth Amendment. He concludes that his New York second felony offender conviction is improper since it was grounded upon the allegedly unconstitutional Florida conviction.

Since there was no problem of exhaustion of state remedies, see United States ex rel. LaNear v. LaVallee, 306 F.2d 417 (2d Cir. 1962), the way was clear for a consideration of the petitioner's writ on its merits. This court assigned counsel to the petitioner and ordered that a hearing be held to explore the merits of petitioner's contentions. At the hearing the petitioner testified at length and, in addition, certain exhibits were received in evidence on behalf of petitioner and respondent.[2] The respondent did not produce any witnesses. At the hearing the following facts were adduced:

Petitioner was born in Mineola, Long Island (New York), on September 16, 1922, and attended public schools in Nas-

---

1. § 831.02 of the 1941 Florida Statutes, F.S.A., provides:

"*Uttering forged instruments.*

Whoever utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in § 831.01 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be punished by imprisonment in the state prison not exceeding ten years, or in the county jail not exceeding one year."

2. The exhibits admitted in evidence are as follows:

*For the Relator:*

1. Certified copy of an information charging Charles Null [sic] with uttering a forged instrument; Circuit Court of Jackson County, State of Florida, May 18, 1943.

2. Affidavit of E. W. Bowles, Clerk, Circuit Court, Jackson County, Marianna, Florida, sworn to May 17, 1958.

3. Letter from Richard W. Ervin, Attorney General, State of Florida, to Relator, August 16, 1960.

4. Certified copy of an abstract of the Army records of Charles R. Noll, Service No. 12-027-760, sworn to by John W. Gross, Chief, Reference Service Branch, Military Personnel Records Center, St. Louis 32, Missouri, Feb. 20, 1963.

*For the Respondent:*

Exhibit A. Certified copy of an abstract of the Minute Book of Circuit Court of Jackson County, held at Marianna, Florida, May 10, 1943, pp. 380, 381.

Exhibit B. Stipulation relating to the testimony of Judge E. C. Welch, February 28, 1963.

sau County, New York. Petitioner's schooling was completed after he finished the eighth grade. Petitioner testified that he had made good grades until he reached the seventh grade, at which time his grades "fell off." Counsel have stipulated that in 1949 petitioner's score on the Stanford-Binet Intelligence Test was within a range to indicate that petitioner was a man of "above average" intelligence. Petitioner has had no history of mental deterioration or psychological problems requiring treatment for mental illness. After leaving school petitioner worked at odd jobs, including work in the moving business, work as a gas station attendant, and various odd jobs. Prior to his Florida conviction petitioner's only involvement in legal proceedings was in a juvenile delinquency proceeding in 1937 in the Nassau County Children's Court. At that time petitioner was fifteen years old. He was not represented by counsel at the hearing and was accompanied to the juvenile delinquency proceeding by his mother and stepfather. The juvenile delinquency adjudication resulted in petitioner being placed on probation.[3]

In May 1940 petitioner, then 18 years of age, enlisted in the United States Army. After completing his basic training at Fort Dix, New Jersey, he was transferred to Craig Field, Selma, Alabama, and in 1942 to the Air Force Base at Marianna, Florida. On January 3, 1943, petitioner was taken into custody by the military authorities as a result of charges stemming from the passing of two forged checks. An abstract of the Department of the Army records, Petitioner's Exhibit 4, reveals that Charles R. Noll, service number 12 027 760 was released by the military authorities into the custody of the Sheriff of Jackson County on January 3, 1943.

Petitioner testified that from January 3, 1943, until May 10, 1943, he was confined in the Jackson County Jail at Marianna. He was not taken from the Marianna Jail until May 10, 1943, when he pleaded guilty in the Jackson County Circuit Court to the information charging him with uttering a forged instrument. While in jail the petitioner testified that he was never contacted by anyone connected with the Air Force nor by anyone connected with the Circuit Court Prosecutor's Office. During 127 days of incarceration he was never advised of the specific charges upon which he was held or of his right to obtain counsel. Noll had no friends or relatives, other than enlisted men, in the Marianna area with whom he could have discussed the nature of the charges and the extent of his constitutional rights. Noll was married in Selma, Alabama, in 1942, but when he was transferred to Florida his wife remained in Alabama. Petitioner's wife never came to Florida and while petitioner was serving his sentence in the Florida State Prison at Raiford he was notified that his wife had obtained an annulment of the marriage.

Petitioner was denied the use of the telephone but the jail officials permitted him to write to the military authorities concerning his plight. Noll attempted to establish contact with a Lieutenant Garwacki, who was the Provost Marshal at Marianna Air Force Base, and a Lieutenant Robert Lee, the adjutant of the company to which petitioner was assigned. No contact was established and petitioner remained incarcerated until May 10, 1943. On that date he was taken from jail to the Circuit Court in Marianna to plead to an information charging him with uttering a forged instrument,[4] a bearer check in the amount of

---

3. While in the Armed Services Noll was twice arrested and convicted before "supplementary courts martial" of the offense of being away from his post without leave, i. e., "AWOL." The "supplementary courts martial" did not follow the form of a criminal trial. Noll appeared before his company commander and the company adjutant. The proceeding was informal and neither prosecuting attorney nor defense attorney was present. Noll answered the charges, admitted them, and was sentenced.

4. Transcript of Hearing, February 5, 1963, p. 54, 35–36, hereafter cited as Tr. ——, p. ——.

$25.00.[5] Petitioner asserts that he was not represented by counsel in the court proceedings leading to his plea. This contention is not disputed by the respondent. Petitioner, an enlisted man, was indigent at the time of the Florida proceedings. He testified that he entered jail with the sum total of $2.33.

According to the petitioner's testimony, his name was called and he was led to the bench by a sheriff to whom he was manacled. Noll testified that he was shown the check by the presiding judge and was asked if he had cashed it. Upon replying in the affirmative petitioner testified that he was requested to sit down. A few minutes later Noll testified that he was taken before the bench again and was thereupon sentenced to confinement in the State Prison at Raiford, Florida, at hard labor, for two years.[6]

Noll further testified that the court did not ask him whether he wished the assistance of counsel. Petitioner testified that he did not request that counsel be assigned to him because he "wasn't familiar with court procedure."[7] The judge who sentenced the petitioner was E. C. Welch, who is still alive. Judge Welch did not testify but he was able to provide information to the respondent's counsel which the parties have incorporated in a stipulation which, in substance, contains the following: That if Judge Welch were called upon to testify he would testify that he has no recollection of the prosecution of the petitioner

for uttering a forged instrument (State v. Noll, Information # 482) but that the usual procedure in his court was to inquire of a defendant if he had counsel representing him. If a defendant answered in the negative the court would ask whether time was requested to secure counsel. If a defendant did not request time to secure counsel the information would be read and the defendant would be asked to plead. Upon a plea of guilty a date would be set for sentencing.

A certified photostatic copy of the Minute Book of the Circuit Court for Jackson County, Respondent's Exhibit B, does not illumine the circumstances surrounding the plea. The minute book contains two relevant entries on page 380. The entry corresponding to State of Florida v. Charles Null [sic] states "Uttering forged instrument. On this day came the State Attorney and the defendant in person, into open court, and the defendant was duly arraigned and entered a plea of guilty to the charge of the information, filed herein." On Page 381, the entry recites the proceedings upon Noll's sentence which, in substance, states that he was led to the bar of the court in the custody of the sheriff and asked if he had anything to say before sentence was imposed. The record indicates that Noll had nothing to say whereupon he was sentenced.[8]

Petitioner testified without contradiction that on the day that the forged check had been passed he had completed

---

5. Supra note 1.

6. Petitioner had in fact been arrested for passing two forged checks but the copy of the minutes of the Jackson County Circuit Court show that the second case (Ostrander case) was discontinued and has never been disposed of.

7. An information charging the crime of uttering a forged instrument was filed in the Jackson County Circuit Court on May 8, 1943. The information charged Noll, in the words of the statute, with knowingly uttering a forged instrument with the intent to defraud. I need not resolve the factual issue of whether the petitioner was read the indictment for I find from petitioner's testimony that he

was aware of the nature of the charge against him.

8. The entry concerning the petitioner's sentence is as follows:

"*State of Florida v. Charles Null* [sic]
"Uttering forged instrument (Clark case). On this day came the State Attorney and the defendant in person, into open Court, and the defendant was led to the bar in custody of the Sheriff and asked by the Court if he had anything to say why the sentence of the law and the judgment of the Court should not be passed upon him at this time and he having nothing to say in bar or preclusion thereof, the Judge proceeded to pronounce the following sentence and judg-

a tour of duty at three o'clock in the afternoon and had cashed the check at about ten o'clock at night. From three o'clock until ten o'clock that night petitioner had been drinking with other enlisted men. Beer and liquor were consumed alternately. The petitioner could not remember how many drinks he had consumed but he did testify that he had been drinking "all day practically." [9] However, the information concerning his consumption of alcoholic beverages prior to his passing the checks did not come to the attention of the Florida court. After sentence petitioner was remanded to the custody of the Sheriff and was in due course taken to the Raiford State Prison and placed in a chain gang. Petitioner was twenty years old at the time of his conviction.

█ Under the doctrine of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942) and its progeny not every state conviction obtained without the assistance of counsel is violative of the due process clause of the Fourteenth Amendment. Only where the failure to assign counsel as in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Com. of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1955); Palmer v. Ashe, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951); Uveges v. Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); United States ex rel. Savini v. Jackson, 250 F.2d 349 (2d Cir. 1957) or the failure to provide an opportunity to obtain counsel of his own choosing as in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945) results in criminal proceedings so apt to result

in injustice as to be fundamentally unfair is the conviction vitiated under the due process clause.

█ Petitioner testified in a straightforward manner. He candidly admitted that he had suffered no mistreatment at the hands of the Jackson County jail officials. At the same time he stated unequivocally that he had cashed the check. His contention that he was incarcerated for almost four months without being informed of the specific nature of the charges against him and without being permitted to contact the outside world appears at first blush to be an incredible atavism from the dark ages of criminal procedure. But this contention is supported, at least inferentially, by the certified copy of an abstract of his army record. This independent documentary corroboration of his claim lends some credence to his version of the facts.

Moreover, the respondent has not contradicted the facts concerning petitioner's consumption of a large quantity of alcoholic beverages before passing the check, and, in fact, he does not take issue with them. Respondent's sole contention in rebuttal is that petitioner was not prejudiced by the failure of the court to assign counsel since the crime charged "was not so complicated nor was the relator so immature or uneducated as to be prejudiced by the absence of counsel when he pleaded guilty to a crime which he acknowledges he committed." [10]

█ Whether or not petitioner was guilty of the crime is, of course, irrelevant to the determination of whether or not he was afforded procedural due process. But the consideration of whether petitioner was prejudiced under the circumstances by the lack of counsel is cen-

---

ment, to wit: 'You, Charles Null, having entered a plea of guilty to the crime of uttering a forged instrument to J. H. Clark and Mrs. J. H. Clark, the Court adjudges you to be guilty of said crime, it is therefore the sentence of the law and the judgment of the Court that you, Charles Null, for your said crime be imprisoned and confined in the State Prison of Florida, at hard labor, for and during

a period of Two (2) years.' Thereupon the prisoner was remanded to the custody of the Sheriff to be delivered to the State Prison authorities." Respondent's Exhibit A.

9. Tr. p. 18.

10. Respondent's Proposed Findings of Fact and Conclusions of Law, at p. 5.

tral to the determination of the fundamental fairness of his Florida conviction. After a careful consideration of all the evidence, i. e., petitioner's direct testimony, the documentary evidence, and Judge Welch's custom and practice as set forth in the stipulation, the court finds that the petitioner has sustained his burden of proving by a preponderance of the evidence that he was not represented by counsel and was not advised of his right to counsel. The court further finds that the failure to provide petitioner with counsel substantially prejudiced his rights.

■ It is evident from the plain language of the statute under which Noll was charged, as well as the Florida decisions, that the crime of uttering a forged instrument requires proof of intent to injure and defraud as essential elements. Harrell v. State, 79 Fla. 220, 82 So. 922 (1920); Clark v. State, 114 So.2d 197, 80 A.L.R.2d 261 (Dist.Ct. of Appeals 1st District 1959). In light of the uncontradicted evidence that petitioner had consumed large quantities of beer and liquor prior to passing the check it would appear that petitioner, with proper assistance and counsel, could have resisted the charge on the ground that he was intoxicated and therefore did not possess the requisite intent to commit the crime. The petitioner, even though of above average intelligence, had never before been involved in criminal proceedings and was totally unfamiliar with the nuances and attenuations of criminal procedure. While the offense might not seem complicated to one experienced in the law, it is unlikely that a youthful and inexperienced defendant could have been able to appraise the situation with sufficient understanding so as to intelligently prepare a defense or a plea. Moreover, the court is mindful of the fact that after incarceration—practically incommunicado—for four months, a naive defendant might well be motivated by a desire to conclude the proceedings by pleading guilty rather than risk another seemingly interminable legal entanglement or incarceration. The unfairness which attended the Florida proceedings is further demonstrated by the apparent failure of the Florida authorities to advise Noll of the possible serious consequences of a guilty plea. Conceding *arguendo* respondent's claim that the offense was a simple and "uncomplicated" one it is clear, nevertheless, that it was a serious crime as evidenced by the undisputed fact that it was one punishable by imprisonment for up to ten years. And the serious penalty imposed on the guilty plea—in Noll's case imprisonment at hard labor for two years—lends dramatic support to his claim that fundamental fairness should have required that the authorities advise him of the serious consequences that could have flowed from his conviction.

There is no lack of intelligence here; nor is there overreaching on the part of the court and the prosecuting authorities. Nonetheless, the court holds that petitioner has proved by a preponderance of the evidence that his conviction was attended by fundamental unfairness as a result of his giving a guilty plea to a serious charge without the assistance of family, friends or counsel and without any comprehension that he had the right to the experienced advice of an attorney. See United States ex rel. Savini v. Jackson, 250 F.2d 349 (2d Cir.1957); United States ex rel. Vines v. Murphy, 214 F.Supp. 642 (N.D.N.Y.1963); United States ex rel. Pennise v. Fay, 210 F.Supp. 277 (S.D.N.Y.1962).

■ Nor would a finding that the presiding judge in the Jackson Circuit Court had actually advised petitioner of his right to counsel necessarily compel the conclusion, pressed by respondent, that petitioner waived his right to counsel. The court is cognizant of the Supreme Court's admonition to indulge in all reasonable presumptions against the waiver of a fundamental constitutional right. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); United States ex rel. Wood v. Denno, 213 F.Supp. 856 (S.D.N.Y.1963). A plea of guilty without benefit of coun-

sel does not permit the inference that the right to counsel was waived. Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945). It is impermissible to presume a waiver from a silent record for "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). Even were this court to find that petitioner had been advised of his right to counsel there is an absence of any evidence in the record to support an inference of waiver. Petitioner's unfamiliarity with criminal proceedings, or for that matter legal proceedings generally, militates against the contention that he was in a position to "intelligently and understandingly reject the offer" even had it been made. And petitioner's lengthy incarceration could hardly have fostered that equanimity and balanced state of mind so essential to the intelligent consideration of a court's offer of counsel.

The authorities upon which respondent has relied are inapposite and in no way compel a contrary result. The cases cited, in which the court held that the convictions did not result in injustice so as to be fundamentally unfair, contain factual elements not here present. In Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1947), the trial judge had admonished and explained to the defendant the consequences and penalties which would result from a guilty plea to charges which the Supreme Court deemed simple and which in the opinion of the Court were not ordinarily capable of being misunderstood by a 51 year old man. As for the other cases cited, Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1958), supports relator's position while United States ex rel. Barrigar v. Robinson, 189 F.2d 766, 760 (7th Cir. 1951) and United States ex rel. Brown v. Murphy, 212 F.Supp. 926 (N.D.N.Y.1963) both involved defendants with previous criminal experience who were found to

have fully comprehended the consequences of the proceedings.

Subsequent to the date of the hearing and while this opinion was being prepared the Supreme Court rendered its opinion in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), overruling Betts v. Brady, supra. Gideon held that a state's failure to appoint defense counsel in a non-capital criminal case deprived the defendant of due process guaranteed by the Fourteenth Amendment without any consideration of the special circumstances attending the conviction. As a result of the Gideon decision the parties requested and were granted leave to address themselves to the question of whether Gideon v. Wainwright should be applied retroactively. But the Court does not reach it.

There is language in the majority opinion of Mr. Justice Black to the effect that "Betts was wrong" and that "in deciding as it did— * * * —the Court in Betts v. Brady made an abrupt break with its own well-considered precedents." Gideon v. Wainwright, supra, 372 U.S. at 343, 344, 83 S.Ct. at 797. Justice Black's statements seem to fall within the amplitude of the Blackstonian rationale that the duty of a court is not to "pronounce a new law, but to maintain and expound the old one." 1 Blackstone, Commentaries 69 (1769); Comment, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907 (1962). In the Blackstonian idiom, when a prior decision is overruled "the subsequent judges do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that it was not law." I Blackstone, Commentaries 68–71 (1769), quoted in Comment, 71 Yale L.J. supra at 908.

Advocates of the view that Gideon was intended to apply retroactively have seized upon Justice Black's use of language as a basis for the argument that Betts v. Brady was never the law and that the principle newly announced in

Gideon was actually viable at the time of Betts. The respondent, of course, does not accept such an interpretation of Gideon. Respondent contends, on the basis of its authorities, that the question of retroactive effect should not be decided on "rigid and abstract dogmas concerning the nature of the law"[11] but upon a more functional approach—whether justice will best be served by retrospective or prospective operation of the decision. Since the court holds that even under the "fundamental unfairness" doctrine of Betts v. Brady petitioner's Florida conviction violates the Fourteenth Amendment's due process clause the court need not reach the question of the retroactive effect of Gideon. Moreover, our Court of Appeals indicated recently in United States ex rel. Compton v. Wilkins, 2d Cir. 315 F.2d 865, that determination of the retroactive effect of Gideon is unnecessary where, as here, the petitioner's application for the writ is sustained under the doctrine of Betts v. Brady. In Compton, the Court affirmed the District Court's order which granted the writ under the principle announced in Betts v. Brady. The Court's *per curiam* decision stated: "We find that, even under the test established in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), and the subsequent Supreme Court cases interpreting and applying that test, there is sufficient evi-

dence in the record to support the findings of Judge Burke and to warrant the affirmance of his order granting the writ of habeas corpus. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792 [9 L.Ed.2d 799], and the concurring opinion of Mr. Justice Harlan, 372 U.S. at 351, 83 S.Ct. at 799." Although the opinion is not, of course, an extensive examination of the retroactivity question, it does at least indicate that the decision of the question should await an appropriate case. Additionally, the Supreme Court has recently remanded eighteen cases on its docket for reconsideration in light of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. See 372 U.S. 768, 83 S.Ct. 1105, 10 L.Ed.2d 138.[12] Accordingly, it would seem prudent to await the decisions of those cases and possibly other clarifications of the problem by the Courts of Appeals.

The writ of habeas corpus is sustained to the extent that the Florida conviction may not be used by a court of the State of New York for the purpose of increasing the petitioner's punishment as a multiple felony offender.

The petitioner is remanded to the custody of the respondent to be held by him pending proceedings which will insure petitioner's prompt return to the Nassau County Court for resentence upon the 1949 forgery conviction. It is so ordered.

11. The majority opinion of Mr. Justice Black states the new principle with breadth. He asserts: "Not only these precedents but also reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." Gideon v. Wainwright, supra, 372 U.S. at 344, 83 S.Ct. at 797. The concurring opinion of Mr. Justice Harlan casts some doubt as to whether the applicability of the new principle need be so broad: "The special circumstances rule has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in noncapital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence. (Whether the rule should ex-

tend to *all* criminal cases need not now be decided.)" id. 372 U.S. at 351, 83 S.Ct. at 800.

12. At least one of these cases, Garner v. Pennsylvania, 372 U.S. 768, 83 S.Ct. 1105, 10 L.Ed.2d 138, involved a collateral attack on a judgment entered in the May 1944 term of the Court of Quarter Sessions in Philadelphia. At the time of the commencement of the collateral proceedings, approximately three years ago, Garner had fully served the sentence imposed on the 1944 judgment of conviction and was then serving a second offender sentence which was predicated in part on the 1944 conviction. Letter from Leon B. Polsky to the Court, April 24, 1963. See McCray v. Rundle, 31 U.S.L. Week 2572 (Pa.C.P. April 17, 1963.) (Gideon v. Wainwright to be applied prospectively.)